143 So. 813

## BARNETT v. BRITLING CAFETERIA CO.
### 6 Div. 140.

Supreme Court of Alabama.
June 30, 1932.

Rehearing Denied Oct. 27, 1932.

Robert W. Smith and Robert E. Smith, both of Birmingham, for appellant.

B. F. Smith, of Birmingham, for appellee.

## ANDERSON, C. J.

It is undisputed that the plaintiff was an employee of the defendant at the time of her injury and was within the Workmen's Compensation Act (Code 1923, §§ 7534–7597), but the controverted question is, Was she acting within the line and scope of her employment at the time she was injured?

The proof shows that she sustained her injury by slipping on the sidewalk immediately in front of the defendant's place of business and while on her way to report for duty and just before entering the way used by all employees for the purpose of discharging the duties to which they were employed. The sidewalk in front of the defendant's place of business, while a public one and used by the public generally, was also used by the defendant as a necessary connection with its business. It was used not only by the public generally in passing, but as the only way of entrance to defendant's place of business by his customers and his employees as well. Not only this, but the defendant made use of it for other purposes in connection with his business, in fact, had used the sidewalk at or about that time for the purpose of washing the plate glass windows on the outside.

■■■ It is, of course, the general rule that, if an employee is injured while going to or from his work to his home, or to or from some point not visited for the discharge of a duty arising out of the employment, or while in the use of a public highway used ·by the public generally, he does not come within the protection of the Workmen's Compensation Act. But there is an exception to the general rule, and the employment is not limited by the actual time when the workman reaches the scene of his labor and begins it nor when he ceases, but includes a reasonable time, space, and opportunity before and after while he is at or near his place of employment. One of the tests is whether the workman is still on the premises of his employer. This, while often a helpful consideration, is by no means conclusive. A workman might be on the premises of another than his employer, or in a public place, and yet be so close to the scene of his labor, within its zone, environments, and hazard as to be, in effect, at the place and under the protection of the act. Honnold on Workmen's Compensation, §§ 107 and 109. Indeed, our own court is in line with the foregoing, and, after stating that the employee need not necessarily be in the actual discharge of a duty connected with the employment, says: "Within the purview of such naturally related and incidental acts in the course of the employment is the movement of the employee in entering, at the appropriate time, the employer's premises to discharge his function; his preparation to begin and to terminate his actual service; and to leave the premises at an appropriate time after the completion of his actual service." Jett v. Turner, 215 Ala. 352, 110 So. 702, 704; Benoit Coal Mining Co. v. Moore, 215 Ala. 220, 109 So. 878, and cases cited.

The plaintiff reached the defendant's place just before time to punch the clock and go to work, but just before entering, and a few feet from the entrance, and while on the way to said entrance, she slipped on the ice on the sidewalk and sustained her injuries. True, she had not entered the defendant's place of business, but was upon the eve of doing so, and the opinion of Justice KNIGHT attaches great importance to the fact that she had not

actually entered, but was upon a public street when injured. True, the sidewalk was a public highway, but so much thereof as was in front of the defendant's place of business was a necessary adjunct and used in connection with the business and in which the plaintiff was employed, and the sidewalk was, to a limited degree, and purpose, a part of the defendant's premises.

In the case of Meucci v. Gallatin Coal Co., 279 Pa. 184, 123 A. 766, the court held that the word "premises," as appearing in the Compensation Act, does not include all property owned by the employer, but does embrace that used in connection with the actual place of work where the employer carries on the business in which the employee is engaged. To like effect is the case of Northwestern Fuel Co. v. Industrial Com., 197 Wis. 48, 221 N. W. 396. In each of these cases the employee was injured upon a public road which went through the employer's plant or works, and the defense was made that the employee was not within the Compensation Act because the injury occurred in a public road. The court held that made no difference, as the road was used in connection with the place of work where the employer carried on the business in which the employee was engaged.

In the case of Redner v. Faber & Son, 180 App. Div. 127, 167 N. Y. S. 242, the court held that an employee, who had gone from the working place to another place for defendant across the street, and upon returning he had reached a point near the curb line in front of the factory where employed he slipped upon the snow and ice in the street and received injuries, was within the Workmen's Compensation Act.

In the case of Industrial Com. of Ohio v. Barber, 117 Ohio St. 373, 159 N. E. 363, the Ohio court held that an employee, who for the purpose of reaching his place of employment travels a course which affords the only unobstructed access thereto, enters upon the course of his employment within the contemplation of the Workmen's Compensation Law when he reaches the zone of such employment that is under the control of his employer, even though such zone be outside the inclosure of the employer. The employee, in this case, was injured about five minutes before time to go to work, when on his way, from twenty to forty feet from the gate going into the plant and while on a public street at a place crossed by the Baltimore & Ohio Railroad.

The New York case, supra, recognized the English rule as to street accidents to which every one using the highway was equally liable after termination of the hours of employment, but draws the line when the employee is engaged in, or about to engage in, his labors and when within the zone of his place of work notwithstanding the accident may have actually occurred in a street.

The judgment of the circuit court is affirmed.

Affirmed.

THOMAS, BOULDIN, and FOSTER, JJ., concur.

GARDNER, BROWN, and KNIGHT, JJ., dissent.

BOULDIN, J. (concurring).

The hazard causing this injury, slippery ice on the sidewalk, was incident to and grew out of the operation of the employer's business.

The zone of danger to employees from the operation of a business is a material factor in defining the premises of the employer.

The fundamental basis of compensation laws is to cast upon the business itself a part of the burden of accidents to employees growing out of the relation of employer and employee rather than leave the entire burden to be borne by the employee, the victim of accident.

The employee here was at this place because of her employment, her movement in course of her employment. The time and place, the hazard, the presence and movements of the injured, were all so closely related to the employment, that I am impelled to concur in the opinion of Chief Justice ANDERSON, holding the injury arose out of and in course of the employment within the meaning of our Workmen's Compensation Law (Code 1923, §§ 7534–7597), always to be liberally construed to award rather than to deny compensation.

KNIGHT, J. (dissenting).

The plaintiff, appellant here, filed this suit in the circuit court, seeking to recover damages of the defendant for personal injuries alleged to have been received by her on or about January 15, 1931, by being caused to fall, by reason of an alleged negligence of defendant, upon one of the streets of the city of Birmingham, in front of the place of business of the defendant. The plaintiff states her case against the defendant in four counts. In the first count the plaintiff avers that, while she was passing the premises of the defendant, and as a member of the public, she slipped and fell upon ice which had been permitted to form or accumulate on the sidewalk in front of said premises, which said sidewalk was a part of twentieth street, of the city of Birmingham, and was a public street, through the negligence of the defendant, thereby causing her to be thrown violently to the sidewalk. Then follows a catalogue of plaintiff's injuries. Count 1 concludes: "And plaintiff avers that the proximate cause of her aforesaid wrong and injuries was in

this: that it negligently permitted the premises in front of said cafeteria to become unsafe for public use."

The third count is for a willful, wanton, or intentional wrong. The fourth count adopts all of the first count down to and including the words, "she slipped and fell upon ice which had been permitted to form or accumulate on the sidewalk in front of said premises through the negligence of the defendant," and then adds the following averment thereto: "And in violation of section 1708 of the Code of the city of Birmingham, Alabama, for 1917."

To the complaint, the defendant filed the plea of the general issue, and a special plea, numbered 3, in which the defendant sought to set up the provision of the Workmen's Compensation Act in bar of the common-law action brought against it by the plaintiff. The plaintiff filed numerous grounds of demurrer to plea 3, which upon argument were overruled by the court. This ruling of the court constitutes plaintiff's first assignment of error.

Upon the overruling of this demurrer, the plaintiff took issue upon the plea of the general issue, and special plea 3; and, upon the conclusion of the evidence, the court gave, at the written request of the defendant, the general affirmative charge in its behalf. This ruling constitutes plaintiff's second assignment of error.

The defendant's plea 3 avers, in terms, that the plaintiff, at the time she received her injuries, was employed by the defendant, and that it (defendant) was then engaged in operating a cafeteria in the city of Birmingham, and regularly employed therein more than sixteen employees in its said business, and was operating the business as regarded injuries to its employees under the Alabama Workmen's Compensation Act. It also further avers that at the time of the alleged accident plaintiff was regularly employed by, the defendant as an employee "in said cafeteria" and was working for the defendant under the terms and conditions of said Compensation Act. The plea also sets up that "the sphere and zone of the hazards there obtaining, aforesaid, arose out of the conditions and environments incident to the operation of defendant's said business under the management and control of the defendant, and constituted a condition and environment of the employment of plaintiff by defendant, and the hazards of that condition and environment were hazards to which plaintiff was required to expose herself in the performance of her contract of employment." With some further averments, not necessary to state, the plea thus concludes: "And defendant says that if plaintiff *received injuries attributable to such* conditions and environments aforesaid, there was a direct causal connection between her employment and her injuries, and plaintiff should not recover in this cause."

Section 7534 of the Code, dealing with employer and employee, provides as the basic law for recovery in cases brought under the Workmen's Compensation Act: *"Circumstances under which compensation becomes due; defenses; wilful negligence.*—When personal injury or death is caused to an employee by an accident arising out of and in the course of his employment, of which injury the actual or lawfully imputed negligence of the employer is the natural and proximate cause, he, or in case of death, his personal representative, for the exclusive benefit of the surviving spouse and next of kin, shall receive compensation by way of damages therefor from the employer, provided the injury or death was not caused by the wilful misconduct of the employee, or was not due to misconduct on his part, as defined in section 7544."

By section 7596, it is provided, inter alia: "(j) *Personal injuries, etc.*—Without otherwise affecting either the meaning or interpretation of the abridged clause, injuries by an accident arising out of and in the course of his employment, it is hereby declared: Not to cover workmen except while engaged in, on, or about the premises where their services are being performed, or where their service requires their presence as a part of such service at the time of the accident, and during the hours of service as such workmen," etc.

Mr. Honnold in his Treatise on the American and English Workmen's Compensation Laws, col. 1, § 115, states the rule, in discussing "Risks due to employment," as follows: "The use of the words 'arising out of,' or words of similar import, makes it a condition precedent to the right to recover compensation that the occurrence shall have resulted from a risk *reasonably incident to the employment;* that there be a causal connection between the conditions under which the employee worked and the resulting injury. While the occurrence need not have been foreseen or anticipated, it must appear after the event to have had its origin in a *risk* connected with the employment, and to have flowed from that source as a *rational consequence."* (Italics supplied.)

To satisfy the words of the act, the occurrence must be one in which there is personal injury by something arising in a manner unexpected and unforeseen from risk reasonably incidental to the employment. Nothing can come "out of the employment" which has not, in some reasonable sense, its origin, its source, its causa causans, in the employment. "That the injury must be one resulting in some reasonable sense from a risk incidental to the employment has, I think, been decided over and

over again." Cozens-Hardy, in Mitchinson v. Day Bros. (1913) 6 B. W. C C 191 C. A. And Mr. Honnold, in same volume of his treatise states broadly the following rule as to risks peculiar to employment (pages 417 and 418): "While it is not ordinarily essential, in order that an accident or injury may be one arising out of the employment, that it be peculiar to the particular employment in which the workman was engaged at the time of the injury, it must arise out of the risk in some way peculiar to the business in which he, was engaged, and not come from a hazard to which he would have been equally exposed apart from the employment. The causative danger must be peculiar to the work, and not common to the neighborhood. It must be incidental to the character of the business, and not *independent of the relation of master and servant.*"

It must be borne in mind that our statute requires, in order that the injured party may be compensated for his or her injuries, that the injury must be produced by an accident *arising out of, as well as in the course of, his or her employment.* The qualifying terms are connected by the conjunction and both conditions must obtain before compensation for the injury can be claimed. It is not sufficient that the injury resulted from an accident received in the course of employment.

In the fourth count of her complaint, the plaintiff grounds her right to recover damages of the defendant for a breach of common-law liability imposed by municipal ordinance, independent of any relation of master and servant; in fact, no such relationship is hinted at in her complaint. To avoid this common-law liability, and thereby to defeat plaintiff's action, the defendant, by his third plea, undertakes to set up the Workmen's Compensation Act of Alabama, and attempts to aver facts to show that, as a matter of law and fact, the plaintiff, if she would recover for her injuries, must proceed under the Workmen's Compensation Act, and not by the common-law action predicated upon negligence. It is made to appear by this plea that, at the time of the accident, the plaintiff was in the employment of the defendant, as a waitress in the defendant's cafeteria, and that defendant regularly employed in his said business more than sixteen employees. The plea, however, seems to studiously avoid making the direct and unequivocal averment that the plaintiff's injuries resulted from an "accident arising out of and in the course of her employment." We do not wish to be understood as holding that it is absolutely essential, to make the plea good, that the plea should have used those precise words, but we do hold that, if those words are not employed, then facts must be stated in a direct and unequivocal manner, from which it would appear that the plaintiff's injuries resulted from an accident arising

out of and in the course of her employment. A careful reading of the plea discloses that it does not aver facts showing that the accident arose out of and in the course of plaintiff's employment. The plea was therefore subject to the very apt grounds of demurrer directed thereto by the plaintiff, and the court was in error in overruling the demurrer.

But, were it conceded that the plea does aver facts showing that the plaintiff was injured by accident arising out of and in the course of her employment, the court was not warranted under the evidence in giving the jury, at the written request of the defendant, the following charge: "Charge (1) The court charges the jury that if you believe the evidence in this case your verdict will be for the defendant under plea three."

Whether the third plea was good or bad, in view of the fact that defendant had filed in the cause a plea of the general issue, the plaintiff had no other alternative, with her demurrer to said plea 3 overruled, but to take issue on the pleas.

The evidence did not entitle defendant to the general charge on plea 3, treating that plea as averring that the injury arose out of and in the course of plaintiff's employment by the defendant. In addition to what we have said above, we will further consider the case with reference to facts appearing in evidence, and the law as applicable thereto. The author, in Corpus Juris, in treating the subject of the Workmen's Compensation Acts, at page 78, § 68e, makes the following presently pertinent observations: "An accident befalling the workman on his way to or from work cannot be held to arise out of the employment where he has not yet come within, or has left, the sphere of his employment. But where the employe is under the control of the employer and on his premises, an injury may arise from his employment, although he is going to or from his work. So where an injury arises out of the character of the way to and from the employment, which is not under the employer's control, it does not arise out of the employment, unless by the conditions of the employment, the use of the particular way is obligatory upon the employe."

The facts in the instant case tended to show that the employee, plaintiff, was engaged as a waitress in the defendant's cafeteria in the city of Birmingham on January 15, 1931, the day of the accident, and that this cafeteria was located on the southeast corner of Twentieth street and Third alley. That plaintiff, in going to her work at the cafeteria on that morning, had crossed the alley, and just as she stepped on the sidewalk in front of the cafeteria her foot slipped on ice, which had accumulated upon the street at that point. The sidewalk was a part of Twentieth street, which was a public thoroughfare of the city. The plaintiff, testifying on her own behalf,

testified: "At the time I was injured, an employee of the defendant by the name of Oscar Collins was washing the front windows of the cafeteria and water had been permitted to run down from the windows and freeze on the sidewalk. At the time I fell I was on the sidewalk about twenty feet from the entrance to the cafeteria but in front of the cafeteria. My services commence from the time I punch the clock in the cafeteria. The accident occurred shortly before 5:30 in the morning at which time I am supposed to report for duty. I had not reported for work at the time and had not been in the cafeteria since leaving there the night before. I had no duty to perform outside of the cafeteria. My work was confined to the inside as a waitress. Since the accident, I have been refused compensation by the defendant. On the morning of the accident, it was very cold and several degrees below freezing. The thermometer registered nineteen degrees."

The plaintiff also read in evidence section 1708 of the ordinance of the city of Birmingham, which makes it obligatory upon the defendant to keep the sidewalk cleared of snow, sleet, and ice.

The defendant examined as a witness in its behalf one J. H. Holcombe, who testified, in substance, that the defendant operated the cafeteria testified about by plaintiff, and that defendant on the day of plaintiff's accident regularly employed in its said business more than sixteen employees, and that plaintiff was one of them, and that defendant was operating its business under the terms of the Alabama Workmen's Compensation Act, and that plaintiff was working for defendant under the terms of said act; that the front of defendant's place of business was built, in a large part, of plate glass, which, in the operation of defendant's business, was washed and cleaned at intervals of every day or two; that this was essential to the operation of defendant's business; that, on the morning of the day of plaintiff's accident one of the defendant's servants, under its instruction, was engaged in washing the outside windows of the defendant's building, and as a result of the work some water ran down on the sidewalk, and later froze and formed an area of ice on the sidewalk, about fourteen feet from the entrance on Twentieth street to the building occupied by defendant for the employees to enter; soon after the windows were washed and the ice had formed, plaintiff was en route to report for work at defendant's place of business, and entered upon said public sidewalk in front of defendant's cafeteria for the purpose of going to the said cafeteria, through the one entrance aforesaid which plaintiff was required to use, and in so doing walked upon the ice above mentioned, and was caused to fall, sustaining injuries giving rise to this suit. The witness testified to other facts not necessary to set out in this opinion.

It thus appears that the plaintiff had not reached the place where she was employed, nor had she actually entered upon her duties as a waitress in the defendant's cafeteria, nor had the time arrived for her to enter upon her daily task. At most, she was on her way from her home to her employer's place of business, using a public street of the city of Birmingham, as her route of travel. At the time and place of her accident, she was simply exercising her right as a citizen, in common with the public generally, to use one of the public streets of the city of Birmingham. Her risk was the same as that of any other member of the public who might desire or have occasion to use this public street. It was no greater, nor any less than that of the general public. And whatever risk there was, it was not a risk, in any true or just sense, incident to, or growing out of, the relationship of master and servant. It is here where the risks of commonalty—that to the general public—must be applied. Where there is no natural connection between the risk and the employment, it must appear that the nature of the employment peculiarly exposed the employee to such danger; otherwise the risk is one incident to the commonalty, and the employer is not liable, and it is said that, except when this natural connection exists, risks of the commonalty ordinarily include street risks, and risks from walking on or along railroad tracks, when incurred in going to or from work, and not on the employer's business.

In Hopkins v. Mich. Sugar Co., 184 Mich. 87, 150 N. W. 325, 327, L. R. A. 1916A, 310, the court held that, where a general engineer, employed to inspect sugar plants located in different cities, slipped on the ice and was fatally injured while about to board a street car after returning to his home town after a trip of inspection, the accident did not arise "out" of his employment; the court saying in an opinion by Judge Steere: "Slipping upon snow-covered ice and falling while walking, or running, is not even what is known as peculiarly a 'street risk'; neither is it a recognized extra hazard of travel or particularly incidental to the employment of those who are called upon to make journeys between towns on business missions. These distinctions are recognized and the rule correctly stated in an opinion of the Michigan Industrial Accident Board, filed in Worden v. Commonwealth Power Co., 20 Det. Leg. News No. 39 (December 27, 1913), as follows: 'It must also appear that the injury arose out of the employment, and was a risk reasonably incident to such employment, as distinguished from risks to which the general pub-

lic is exposed. To illustrate: * * * On the other hand, it may be fairly said that one of the most common risks to which the general public is exposed is that of slipping and falling upon ice.'"

In the case of Sheldon v. Needham, 7 B. W. C. C. 471, the English Court of Appeal held that under the English Workmen's Compensation Act, from which the words of the New York statute, "arising out of and in the course of his employment" were taken, a charwoman in regular employment, who was sent by her employer to post a letter at a post box about one hundred yards from the house, and who slipped on a banana skin in the street and fell, breaking her leg, was not entitled to the benefit of the act, for the reason that the accident, being due to a risk no greater than is run by all members of the public, did not arise out of the employment. We do not commit this court to the conclusion reached in the said case by the English Court of Appeal, but we cite the case to show what that court held in a case involving a street risk under a similar statute to our own.

In the case of Taylor v. Birmingham Electric Co., 213 Ala. 282, 104 So. 527, 529, it is held that, where the deceased, a track layer for defendant street railway company, boards its street car to go home, riding on transportation ticket furnished him by the company, an injury to him from passing automobile, while he was alighting from the car was not an injury arising out of and in the course of his employment within the terms of the Workmen's Compensation Act. The court observed in the case: "He was in the public street, using it as such, and such use had no relation to service for the employer, was not the premises of the employer within subd. (j) of our compensation law."

In the case of Sloss-Sheffield Steel & Iron Co. v. Thomas, 220 Ala. 686, 127 So. 165, 166, it is said: "An accident to a workman on the way to work is not ordinarily in the course of employment, 1 Honnold on Workmen's Compensation, § 107, p. 358, as when transported at his own expense, Ex parte Am. Fuel Co., 210 Ala. 229, 97 So. 711; Erickson v. St. Paul City R. Co., 141 Minn. 166, 169 N. W. 532."

It only remains to be said that, in the opinion of the writer, concurred in by Justices GARDNER and BROWN, plaintiff's cause of action against the defendant is for a violation of a common-law duty, and, for the redress of any wrong done or suffered by her from such breach of duty, she must seek relief in a common-law action, and not under the Workmen's Compensation Act. She has pursued, under the facts in this case, her proper remedy, and the court, in our opinion, committed error (1) in overruling her demurrer to defendant's third plea, and (2) in giving the general affirmative charge for the defendant.

Chief Justice ANDERSON, writing for the majority in this case, cites the cases of Jett v. Turner, 215 Ala. 352, 110 So. 702, Benoit Coal Mining Co. v. Moore, 215 Ala. 220, 109 So. 878, as supporting the conclusion of the majority in this case.

We take it that the facts in the Jett Case, supra, are so unlike the facts in the instant case that what was said in that case cannot in any true or just sense, support the holding of the majority in the instant case. In the Jett Case, as a part of the contract of hiring, the employer undertook to, and did furnish auto transportation for the servant to and from his place of service. While being transported to his home from his employer's place of business, in an automobile designated by the employer's foreman in charge of the employer's business, the employee received his injuries. This court in that case very properly held that, for all practical purposes, the employee was still in the master's business. The Jett Case is sound, and we do not question, in the least, the conclusion reached, holding the employer liable. But we do assert that the facts of that case clearly differentiate it from the instant case.

In the case of Benoit Coal Mining Co. et al. v. Moore, et al., supra, cited by the CHIEF JUSTICE, there was evidence tending to show the relationship of employer and employee existed, that the employee *was on the premises of the employer*, and *on the way to his working place*. It was in view of this tendency of the evidence that the court sustained the judgment of the circuit court awarding compensation. There is absolutely no similarity between the Benoit Coal Mining Company Case and the case now before us. In support of the conclusion in the Benoit Coal Mining Company Case, this court cited with approval the following excerpt from the case of City of Milwaukee v. Althoff, 156 Wis. 68, 145 N. W. 238, 239, L. R. A. 1916A, 327: "In the instant case, when the servant *reported to his foreman* and *received his instructions for the day* and proceeded to carry out these instructions by *starting for the place* where he was to work, we think the relation of master and servant commenced, and that in walking to the place of work the servant *was performing* a service growing out of and incidental to his employment." (Italics supplied.)

The CHIEF JUSTICE, in quoting from Honnold on Workmen's Compensation, and in writing to the exception to the general rule that an accident to a workman on the way to work is not ordinarily in the course of employment, entirely overlooks the fact that this author, as the first and controlling req-

uisite to present a case for compensation against the master, says, "That is essential to the right to compensation that the injury shall have been received in the course of the workman's employment; that it shall have been received while he was doing some act reasonably incidental to his work." The learned CHIEF JUSTICE also overlooks this further statement of Mr. Honnold: "While there is a difference between the beginning of employment and the beginning of work or beginning to work on the employer's time, an accident to a workman on the way to work is not ordinarily in the course of employment. Exceptions have been noted to this rule in *cases* where the accident occurred *while the employe was on the employer's premises, or after reporting for duty.*" (Italics supplied.)

Mr. Schneider, in his excellent treatise on Workmen's Compensation Law, uses this very apt and pertinent expression in dealing with cases similar to the one now before us: "The general rule, supported by the weight of authority, is, that when employes are injured on the street, from causes to *which all other* persons using the street are likewise exposed, the injury cannot be said to arise out of the employment. So where an employe whose business for the company required him to travel on the streets between *the various establishments* of his employer, slipped *on an ice* covered sidewalk running to catch a street car and sustained injuries from which he died, the court, in refusing to make an award said: 'Slipping on ice and falling while walking or running is not even what is known as peculiarly a "street risk"; neither is it a recognized extra hazard of travel, or particularly incidental to the employment of those who are called upon to make journeys between towns on business missions." This unfortunate accident resulted from a risk common *to all,* and which arose from no *specific dangers of the road from travel and traffic* upon it. It was not a *hazard peculiarly incidental to or connected with deceased's employment,* and, therefore, is not shown to have a causal connection with it, or to have arisen out of it." (Italics supplied.) Hopkins v. Michigan Sugar Co., 184 Mich. 87, 150 N. W. 325, L. R. A. 1916A; 310.

The majority opinion also cites the case of Redner v. H. C. Faber & Son, 180 App. Div. 127, 167 N. Y. S. 242, 243. In that case it was held that a case for compensation was made by the facts presented on the trial. In that case, the employee, who worked sometimes in one building and sometimes in another on opposite sides of the street, slipped on ice and was injured in going from one building to another. The facts were that, while the location of the accident "was technically a public highway, it was in fact practically a part of the premises of these two corporations; it was not *generally used for street purposes.*" (Italics supplied.)

The majority opinion also cites the case of Northwestern Fuel Co. v. Industrial Commission of Wis., et al., 197 Wis. 48, 221 N. W. 396. We take it that nothing can be found in this case to support the conclusion of the majority in the instant case. A casual reading of the case will at once disclose that it is not an authority in point. In this Wisconsin case, the employee was injured while riding a bicycle on his way home after work hours over a road *maintained* by his *employer* for its own purposes, though nominally a public highway. In Wisconsin there was and is a statute (St. 1927, § 102.03(2), as pointed out in the case, which provides: "Every employee going to and from his employment in the ordinary and usual way, while on the premises of his employer, shall be deemed to be performing service growing out of and incidental to his employment." (We have *no* such statute.) The court in that case, in reaching the conclusion that the employee was entitled to compensation, said: "The evidence before the Industrial Commission warrants a conclusion that this northeasterly extension of Hill avenue was encroached upon to a large extent by plaintiff [defendant in the suit] and almost entirely devoted to its exclusive use, except as it was crossed by the railroad tracks; the plaintiff largely, if not entirely, kept it in repair and furnished all the material for repairs; it was its recognized way for employees to come and go to the other portion of its premises; it recognized in its use thereof no distinction between the small strip where the accident occurred, the fee of which happened to be in another, and the rest of that short extension of Hill avenue. It treated it for all practical purposes as its premises. Though nominally a public highway dedicated to public uses, yet plaintiff used it as part or parcel of its premises, and just as though it had the fee title to all, as it had to all, except to the one of the narrow strip opposite where the injury happened." The court, under the influence of the above-quoted statutory provision, held the master liable. Can it be said for one moment that the defendant in the instant case, waiving aside the Wisconsin statute, had and exercised the same rights over the street in Birmingham, which abutted his place of business, that the defendant did in the Wisconsin case? We take it that no one of the majority would make such an insistence. The case is not an authority for the holding in the instant case, and we are somewhat surprised that the learned writer of the majority opinion should have cited it.

The case of Meucci v. Gallatin Coal Co., et al., 279 Pa. 184, 123 A. 766, 767, is brought forward in support of the holding of the majority. We will therefore discuss briefly this case, lest by our failure to do so it might be assumed that we tacitly agreed that it did support the majority opinion. Nothing in

this case, as we see it, tends to give support to the holding in the instant case of the majority. The facts in the Meucci Case were: "The Gallatin Coal Company operated a mine, and employed one Crompton as boss, and Meucci as a miner. Its entrance was on the hillside with the tipple below, partly constructed on a township road, used by *the company for its business purposes in loading and unloading, and kept in repair and maintained by it.* On September 11, 1920, a dispute arose as to the number of cars taken out by the claimant, he insisting on credit for 33 instead of 30 as indicated by the foreman's record. Words ensued in the morning, but the discussion was abandoned for the time, and Meucci remained at his work in the mine until afternoon. He came from the shaft between 2 and 3 o'clock to await the disappearance of smoke caused by the blasting within, but had not terminated his task for the day. The foreman was then on the roadway beside the tipple, and called for Meucci to come down. When he did so, further argument followed as to the amount due for coal mined, and in its course, Crompton used offensive language, whereupon he was struck by claimant, and, in turn, hit the latter, knocking him down, causing a loss of the sight of his only remaining eye. It was for this injury compensation was given." In disposing of this case, the Supreme Court of Pennsylvania said: "The trouble had its origin in the service, and was therefore compensable; the attack having been upon property used by the company in the carrying on of the particular business. It is to be kept in mind that it is not necessary to hold the accident arose from the employment, but the claim is compensable if shown to have occurred in the course thereof; other essential requirements of the act being proven." We must confess it is beyond our ken to discern any similarity, in fact or law, between this Pennsylvania case and the one now before the court.

The place where the injury occurred in the Pennsylvania case was. for all practical purposes, the premises of the defendant, used by it in the conduct of its business, kept in repair and maintained by it.

The last-cited case by the majority opinion is that of Industrial Commission of Ohio v. Barber, 117 Ohio St. 373, 159 N. E. 363, 365. This case involved an injury arising under the Ohio Workmen's Compensation Law, and was decided, of course, under the influence of the statute law of that state. But it would matter not under what law it was decided; there is nothing in the case to support the majority view in the instant case. The pertinent fact of the Ohio law, under which compensation was awarded, reads: "Every employee * * * who is injured, and the dependents of such as are killed in the course of employment, *wheresoever such injury has occurred* * * * shall be paid such compensation out of the state insurance fund," etc. Gen. Code, § 1465-68.

The facts of this Ohio case show that the place where the employee was injured was, in reality, a part of the premises of the employer. In the opinion in the case it is said: "While all of Summit street is public property, and the public generally have a right to use it, and the public authorities have the power to maintain it in any lawful manner, the record discloses that the street had been, and was, in fact, maintained, from Olive street to the plant of the Thomas Sheet Steel Company [the employer], and that it had maintained it as a common passageway for both pedestrians and vehicles and had not provided for its pedestrian employees a separate means of access to its plant." And it is further stated that the passageway and gateway were actually, if not legally, under the control of the Thomas Sheet Steel Company. The court held that the whole situation between Olive street and the plant of the Thomas Sheet Steel Company constituted a condition and an environment of the employment under the control of the employer, and the hazards of that condition and environment were hazards to which the decedent was required to expose himself in the performance of his contract of employment.

As we see it, the conclusion reached by the majority in the instant case is neither supported by text-writers, nor by the adjudication of other courts, where similar statutes are to be found.

It is said that the facts make this a border line case, but, whether that is true or not, its proper place is not under the Workmen's Compensation Law of Alabama.

The limit of judicial power is reached and exhausted with the construction and interpretation of a law. It is no proper function of the court to extend its provision by judicial construction, and it occurs to the writer that this can only be the effect of the holding of the majority in the instant case. If the Legislature of the state, which enacted the Alabama Workmen's Compensation Act, were called upon to identify the law as construed by the majority in the instant case, we doubt seriously that it would recognize its own spawn and creature. While the writer does not profess to be a prophet, yet it requires but little of that art to see that this case will return to this court freighted with many difficulties.

GARDNER and BROWN, JJ., concur.