EDUVIGIS GUILLOT, ETC., ET AL., Appellants, *v.* INDUSTRIAL COMMISSION OF PUERTO RICO, Respondent.

No. 242.   Argued June 8, 1942.—Decided July 8, 1942.

*Pedro M. Porrata* and *Juan C. Santiago Matos* for appellants. *George A. Malcolm, Attorney General, G. Benítez Gautier, Deputy Attorney General* and *G. Atiles Moréu, A. de Jesús Matos* and *J. Correa Suárez, Legal Advisers of the State Insurance Fund,* for the Manager of the Fund.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the court.

Eduvigis Guillot, for herself and as mother with *patria potestas* over her minor son, Lester Agustín García, and Damiana García have applied to this court for the review of a decision of the Industrial Commission of March 27, 1942, whereby a dismissal was ordered of the appeal taken by

them from a decision of the Manager of the State Insurance Fund of March 9, 1938, declaring noncompensable the accident that caused the death of the workman Agustín García.

They alleged that the commission erred in holding that in order for the accident to be compensable it is indispensable that the place where the accident occurs should be under the control of the employer; that a public highway which crosses the employer's land and which forms an integral part of the means of communication for going to and from the property of the employer is not a part of the premises of the employer for the purpose of the Workmen's Compensation Act; in not applying to the case at bar the doctrine laid down in the case of *Bountiful Brick Co.* v. *Giles,* (1928) 72 L. ed. 507, in which the Supreme Court of the United States held that "the necessary way of ingress and egress" to the premises where the work is done is a part of such premises; in giving to its own finding of fact as to the connection between the premises and the highway a different legal scope from that which it has under the law and the jurisprudence; and in applying to the facts of this case the "street accident" doctrine when the applicable doctrine is the one relative to the incidental risks existing in the proximity of the place where the employer invites the employee to work.

After the writ had been issued, the commission sent up the original record and on the 8th of last June a hearing was held before this court with the attendance of counsel for the appellants and the State Insurance Fund who submitted their arguments after filing their respective briefs.

Pursuant to the initial investigation made, the Manager of the State Insurance Fund stated in substance the facts and weighed the same in connection with the statute as follows:

"From the investigation made in this case, it appears that the occurrence took place after working hours, on a public highway,

while the workman was returning to his home riding a bicycle. Evidently this accident is not covered by the Workmen's Accident Compensation Act, approved April 18, 1935 . . ."

The Industrial Commission, as a result of the hearing held before it pursuant to the appeal taken, held as proven the following facts:

"On May 6, 1937, Agustín García, the workman in this case, had already been working three days as a cartman on the cane plantation 'Cintrona 2a.' owned by Sucn. J. Serrallés and located within the jurisdiction of Juana Díaz, earning wages at the rate of $1.75 per day. On that same day, after quitting his work at 4:30 in the afternoon and after washing himself and changing into his street clothes, he got on his bicycle which he used as a means of transportation from Ponce where he lived to the place of his work and going upon the road leading from said plantation he turned into the public highway which runs from Ponce to Guayama and is known as the 'Littoral Highway'. He had just traveled a distance of about half a kilometer towards the right of the highway in the direction of Ponce when, upon reaching a place opposite the great lane which leads from said highway through land of the Merceditas Hacienda to Central Merceditas, he met two automobiles which were coming at great speed from the direction of Ponce. One of them, on the left, maneuvered as if to go towards said Central and thereupon Agustín García, in order to avoid colliding with it. swerved slightly towards his left and then collided with the other automobile which was travelling side by side with the former, and which ran over him, and fatally injured him, he dying a few hours afterwards in one of the clinics of the city of Ponce in consequence of the injuries sustained, leaving as presumptive beneficiaries his legitimate wife, Mrs. Eduvigis Guillot, a minor son born out of his marriage with the latter and named Lester Agustín, and his mother, Doña Damiana García."

It then examined the pleadings of the appellants, and analyzed the decisions cited by the latter and other decisions which it considered as applicable, and finally stated its conclusions in the following terms:

"It is our opinion that, in accordance with the facts before us and the study we have made, the accident in which Agustín García

was killed was one of the current sort or of common occurrence on the public highways and belongs to the class known as 'street accidents', as to which this Industrial Commission has repeatedly held adversely to the contention that they are covered by the Workmen's Compensation Act. . . . In all of them the Industrial Commission has considered accidents sustained by workmen on public roads, whether the same are called highways or municipal streets, while travelling to the place of their work or returning from the latter to their homes, but outside the place or location of their employment and without the risks peculiar to such public ways being incidental to the work performed by them."

A reconsideration of that decision was requested and upon the same being denied, an appeal was taken to this court.

██ In discussing the errors which they attribute to the commission, the petitioners lay special emphasis on the place where the accident occurred and on two judicial decisions: one of the Supreme Court of the United States and another of the Supreme Court of Alabama.

As regards the place, we have already adverted to the finding made by the commission. Let us see whether or not, in the light of the law in force in this island which prescribes that its provisions shall be applied to all such workmen and employees who suffer injury, are disabled, or lose their lives by reason of accidents caused by any act or function inherent in their work or employment, when such accidents occur in the course of said work or employment and as a consequence thereof, the said decisions are applicable.

That of the Supreme Court is *Bountiful Brick Co.* v. *Giles,* 276 U. S. 154, 72 L. ed. 508. The doctrine therein laid down is as follows:

"Liability may constitutionally be imposed under a workmen's compensation law where there was a causal connection between the injury suffered by an employee and the employment in which he was engaged at the time, substantially contributing to the injury.

"If the employee be injured while passing, with the express or implied consent of the employer, to or from his work over the

premises of another in such proximity and relation to the premises of the employer as to be in practical effect a part of them, the injury is one arising out of and in the course of the employment as much as though it had happened while the employee was engaged in his work at the place of its performance.

"Award of compensation to a brickyard employee who was killed by a railroad train while crossing the right of way, off the public road, on his way to work—held consistent with the Fourteenth Amendment, in view of the facts stated in the opinion."

As may be seen, the announced rule was established "in view of the facts stated in the opinion."

Said opinion was delivered by Mr. Justice Sutherland and in it the facts are recited and discussed for the purpose of the application of the law and the jurisprudence, thus:

"On June 17, 1925, Nephi Giles, an employee of the brick company, while crossing the tracks of the Bamberger Electric Railroad Company on his way to work, was struck by a train and killed. The yard of the brick company is on the west side of the railway tracks immediately adjacent thereto, and connected therewith, as the commission found, by a spur. The railroad tracks run north and south. Giles resided—and the evidence indicates that the employees generally resided—easterly from the railway tracks. In going from their homes to the brickyard, it was impossible to avoid crossing the railway tracks. There was a public crossing, called the Burns road, about 200 yards south of the brickyard. The right of way of the railway company opposite the yard was fenced on both sides. Giles, as well as other employees, in going to work, sometimes followed the Burns road to the railway crossing, and then went north along the railway tracks to the northeast corner of the brickyard and thence through a gap in the fence to the north entrance of the yard; and sometimes employees, including Giles, entered the right of way through the east fence at other points north of the Burns road, and thence crossed the tracks more or less directly to the gap. This varied practice was well known to the company and carried on without objection on its part. It was possible to reach the brickyard by following the Burns road across the railway tracks and for a distance west, and thence northerly and easterly to the west entrance of the yard, but this way was long, circuitous and inconvenient, and, so far as the evidence shows,

not used. A deep open ditch lying north of the road prevented access to the south end of the brickyard.

"The manager of the company testified that he knew of the many ways by which the employees crossed the tracks; that he had seen Giles coming in all ways; that he cautioned Giles a number of times to be careful, but did not instruct him or any of the employees to discontinue these methods of crossing.

"On the occasion of the accident which resulted in his death, Giles entered the Bamberger right of way through the wire fence on the east side at a point nearly opposite the gap in the west fence. He was struck while proceeding across the tracks to this point of exit.

"*      *       *       *       *      *       *

"Whether Giles was negligent in entering through the fence where he did, or in crossing the tracks, or in not selecting the safest way, are matters not relevant to the inquiry. Liability was constitutionally imposed under the Utah compensation law if there was a causal connection between the injury and the employment in which Giles was then engaged substantially contributing to the injury. *Cudahy Co.* v. *Parramore,* 263 U. S. 418, 423–425. And employment includes not only the actual doing of the work, but a reasonable margin of time and space necessary to be used in passing to and from the place where the work is to be done. If the employee be injured while passing, with the express or implied consent of the employer, to or from his work by a way over the employer's premises, or over those of another in such proximity and relation as to be in practical effect a part of the employer's premises, the injury is one arising out of and in the course of the employment as much as though it had happened while the employee was engaged in his work at the place of its performance. In other words, the employment may begin in point of time before the work is entered upon and in point of space before the place where the work is to be done is reached. Probably, as a general rule, employment may be said to begin when the employee reaches the entrance to the employer's premises where the work is to be done; but it is clear that in some cases the rule extends to include adjacent premises used by the employee as a means of ingress and egress with the express or implied consent of the employer. Id., p. 426. And see generally, *Procaccino* v. *Horton & Sons,* 95 Conn. 408; *Merlino* v. *Connecticut Quarries Co.,* 93 Conn. 57; *Corvi* v. *Stiles & Reynolds Brick Co.,* 103 Conn. 449; *Starr Piano Co.* v. *Industrial Acc. Com.,* 181 Cal. 433, 436–438; *Sundine's Case,* 218 Mass. 1, 4.

"In the *Parramore* case the same Utah statute was under consideration, and we held that it was valid as applied to the case of an employee who, while on his way to work, was killed by a locomotive at a public crossing on a railroad adjacent to his employer's factory. There, as here, it was necessary for the employees, in order to get to the place of work, to cross the tracks, and they were in effect invited by the employer to do so. The difference between the two cases is that in the former the crossing customarily used was entirely upon a public road, while here the way followed was in part along the railway tracks and by crossings within the railroad right of way wherever the employees upon their own volition might choose to go.

"The present case, though it comes nearer the border line, falls within the principle of the *Parramore* case. Since the only way of access to its brickyard from the east was across the railway tracks, the company necessarily contemplated the crossing of them by its employees. No definite line of travel being indicated by the company or followed by the employees, who, with the company's full knowledge and acquiescence, habitually crossed wherever they saw fit, it results that, however the crossing was made, the risk thereby incurred was reasonably incidental to the employment and became annexed as an implied term thereof. If it were necessary to strengthen the implication of consent on the part of the company to the crossing by any way its employees chose to take, it would be enough to refer to the testimony of the manager, who knowing of the practice, did not forbid it, but in effect approved it by warning Giles simply to be careful."

As may be noted, the facts were different from those of the present case. There it was necessary for the workman, in order to go to or from the plant of his employer, to cross the tracks of an adjacent railroad, whereas here the workman went from the plantation "Cintrona 2a.", where he worked, towards the Littoral Highway, which was an insular public road and he traveled over it a long distance without difficulty. The accident took place on that highway.

Great emphasis is laid upon the fact that in front of the place where the accident occurred there is a broad lane which leads towards the sugar mill belonging to the employer, whose business tends to increase considerably the traffic

thereon; but conceding that from the fact that the plantation and the sugar mill belonged to the same employer it might be concluded that the same business was involved, even so, we could not go so far as to agree with the appellants, that the accident occurred not merely on the lane but on the premises of the employer or at a place in such proximity to said premises as to be in practical effect a part of them.

Once the workman fully entered upon the insular highway when he passed over the place which faced the great lane leading to the Central, he was in the same situation as all other persons travelling along that highway. Any increase in the traffic resulting from the business affected generally all persons and not the workman in particular.

The facts in the case of *Alabama, Barnett* v. *Britling Cafeteria Co.,* 225 Ala. 462, 143 So. 813, 85 A.L.R. 85, clearly and fully appear from the following headnote:

"Injury to an employee slipping on the sidewalk immediately outside the employer's place of business, which she was about to enter on her way to work, by reason of ice which had formed from water used in washing the windows, is one sustained within the line and scope of the employment within the Workmen's Compensation Act." (85 A.L.R. 85)

A different situation, it may be noted, was also involved there.

Irrespective of any efforts made to show the contrary and of any decisions cited, it will always have to be concluded that the rule to be applied here is the general rule and not the exception. So long as the law is not changed in the sense of requiring an insurance policy to cover the workman everywhere, and while the statute remains in its present form, the principles covering cases of this kind are the ones set forth with simplicity and precision by Lord Cozens-Hardy in *Longhurst* v. *John Stewart & Son, Ltd.,* 2 K. B. 803, 32 T.L.R. 722, W. C. & I. Rep. 292, 9 B.W.C.C.

605 (affirmed 1917 App. Cas. 249), cited in *Burchett* v. *Anaconda Copper Min. Co.*, 48 Idaho 524, 530, to wit:

" 'I think two propositions are established by the authorities: (*a*) The employment of a workman does not begin until he has left a public road, and it does not end until he has reached a public road. While on the road, he is exercising his right as a member of the public, and not any right arising out of his contract of employment. (*b*) When the workman is on the employer's land, he would be a trespasser, but for the contract of employment, and he is within the protection of the Act, although the accident may happen when he is not actually at work, but is only going to or returning from his work.' "

As was said in *Bacó* v. *Industrial Commission*, 52 P.R.R. 836, 842, which is a case closely analogous to the present one, "The difficulty in deciding cases of this kind is that there is a natural tendency toward allowing compensation. Because of this the letter of the statute may have sometimes been carried further than is reasonable, to the detriment of the State Fund, which was not calculated on the basis of such risks."

The two decisions appealed from must be affirmed.

Mr. Justice De Jesús did not participate herein.