47 So.2d 270

**HAMILTON MOTOR CO. et al.**
**v. COONER.**

6 Div. 982.

Supreme Court of Alabama.
June 22, 1950.
Rehearing Denied Nov. 2, 1950.

London & Yancey, Geo. W. Yancey, and Frank E. Lankford, all of Birmingham, for appellant.

Powell & MacLaurin and Bankhead, Skinner & Kilgore, all of Jasper, for appellee.

424

STAKELY, Justice.

This is a petition for certiorari to review the judgment of the lower court awarding compensation under the Workmen's Compensation Act, Code 1940, Tit. 26, §§ 253–325, to the widow and dependent children of Grady Cooner, deceased.

Grady Cooner met his death on June 15, 1948, at 5:25 p. m. in an automobile accident on Alabama Highway 78 approximately 1¼ miles east of Jasper, Alabama. The question for decision is whether the death of Grady Cooner arose out of and in the course of his employment.

Grady Cooner was employed by the defendant Hamilton Motor Company, a partnership of which Lee Hamilton was one of the partners. Grady Cooner worked as a mechanic in the shop which was located in Jasper, Alabama, and had worked for the defendant for about ten years prior to the time of the accident. During that time he was employed to do mechanical work and help on any other work for the advancement of the company's business. He worked as a mechanic, servicing cars, pulling in wrecks from the highway to defendant's place of business, working sometime at night, sometime overtime and on the day of the accident and prior thereto he had assisted in digging the pit and fixing pipes where a grease rack was being installed by the defendant company.

The completion of the installation of the grease rack required the pouring, mixing and coloring the concrete. This work was commenced late on the evening of June 15, 1948 and required working late in the night as the concrete had to be worked while wet and before it hardened. Charlie Sisk, who was a mechanic for the defendant company, had been working on this grease lift from time to time. On the evening of the accident John H. Sampson had been employed by the defendant to pour and work the concrete for the defendant company. Lee Hamilton, who has been referred to, requested Charlie Sisk to stay, if he would and could, to help finish the concrete job. Sisk replied that his wife would be expecting him in a few minutes. Lee Hamilton knew that the wife of Charlie Sisk was not in good health at the time. Charlie Sisk lived near Cordova, Alabama, about eight miles east from Jasper. Charlie Sisk told Lee Hamilton that he (Sisk) or someone else would have to get word to his wife. Lee Hamilton made no reply to this statement. However, Charlie Sisk in the presence and hearing of Lee Hamilton asked S. B. Whatley, an employee of the defendant company, to notify his wife that he would be late getting home. For some reason S. B. Whatley could not go to notify the wife of Charlie Sisk. In the presence of Lee Hamilton, Charlie Sisk stated that he (Sisk) had "to stay there and finish the job." It was necessary for him to do this work immediately helping mix the concrete and color it and finish the floor of the rack and this had to go on before the cement set up and got hard. It was necessary for it to be done immediately as fast as it got ready to be done.

At about five o'clock Grady Cooner came to Charlie Sisk and told him that he would go to notify his wife. Thereupon Charlie Sisk pitched him his (Sisk's) car keys and Grady Cooner got into Sisk's car and left on the mission to notify Sisk's wife at Cordova. There is testimony tending to show that the working hours of the company were from 7 a. m. to 5:30 p. m. and that Grady Cooner had not checked out for the day. There is testimony that Grady Cooner was killed in an accident which happened at 5:25 p. m.

Both Lee Hamilton and Charlie Sisk testified that Grady Cooner before leaving to go to Cordova asked Lee Hamilton if he wanted him (Cooner) to stay and help with the concrete and Hamilton replied, "Much

obliged, Grady, Charlie is going to stay." According to the testimony of Lee Hamilton he did not know that Grady Cooner had gone to Cordova. At this time Grady Cooner had changed from his work clothes to his street clothes when he left on the mission to notify Sisk's wife. Lee Hamilton further testified that he did not personally send Grady Cooner on this mission. However, the evidence shows that Lee Hamilton told Charlie Sisk that he wanted him to stay after the usual working hours to work on the grease lift that was being installed if he could and would and Charlie Sisk replied that his wife should be notified and he told Lee Hamilton "It looks like I will have to knock off and run down and tell my wife that I will be working late." In the conversation between Charlie Sisk and Lee Hamilton relating to going to Cordova to notify the wife of Charlie Sisk or getting someone to go for him Lee Hamilton made no reply to Charlie Sisk about this.

The grease rack being worked on occupied a space of 35 to 40 feet square. The parties supervising the installation and work on the same were John H. Sampson, a concrete finisher, Charlie Sisk, who was entrusted with supervising the mixing of the concrete with the color finish to be placed on the floor of the grease rack, which had to be worked simultaneously with the pouring of the concrete, and Lee Hamilton, a partner of the defendant company. All of the conversations relating to the trip to Cordova took place within the foregoing area about 5:00 p. m. Lee Hamilton was present and according to S. B. Whatley's testimony within eight feet of him and was standing between Whatley and Sisk when Sisk requested Whatley to go and make the trip to Cordova, although Hamilton testified that he did not hear the conversation. Charlie Sisk was working on the grease rack when Grady Cooner came and got the car keys in order to make the trip to Cordova and Lee Hamilton was present, although according to his testimony he did not see or hear what transpired.

At the time of the accident Grady Cooner was travelling the direct route over the highway to Charlie Sisk's home to perform the mission of notifying Charlie Sisk's wife that her husband was working late for the company.

We quote the following excerpts from the testimony of S. B. Whatley, an employee of the defendant company, with reference to the employment of Charlie Sisk.

"Q. Who had charge of building the lift? A. Charlie Sisk.

"Q. Did he supervise the building of it? A. That's it; he pushed that project; so far as I know he did supervise it.

\* \* \* \* \* \*

"Q. You know he was a mechanic and when it came to that lift he did the work himself? A. Specifically assigned to work that project.

"Q. What did you hear him, Mr. Hamilton, tell him? A. Stay right on the job until it is finished."

We quote the following excerpt from the testimony of Lee Hamilton:

"Q. Mr. Cooner came up to you and made some inquiry, I believe you said, about whether you wanted him to stay, is that right? A. Yes, sir.

"Q. Did he go on to say whether you wanted him to help with the concrete? A. He calls me Lee—Lee and Grady; said 'Lee, do you want me to stay and help you finish this concrete work?'

"Q. What did you say? A. I said, 'No, Grady, much obliged, Charlie is going to stay.'

"Q. Charlie Sisk? A. Yes, sir.

"Q. When you replied to Mr. Cooner you knew Charlie Sisk was going to stay on the job. A. I did not know definitely he was going to stay; he indicated he would.

"Q. You assumed he would? A. Yes.

"Q. At that time Charlie Sisk had told you he or someone would have to notify his wife he was going to stay and work? A. Yes, sir.

"Q. You knew that was the case? A. Yes, sir.

"Q. You knew Sisk or someone for him would have to notify his wife if he stayed and worked overtime? A. That's what he told me.

"Q. When he told you that, after he told you that, you told Mr. Cooner, 'Charlie is going to stay tonight.' A. Yes, sir.

"Q. Mr. Sisk would stay? A. Mr. Sisk would stay."

There is no doubt that at the time of his death Grady Cooner was performing a service for his employer. It was to keep an essential man on the job to perform a necessary service in working and coloring the concrete being poured while setting and before it hardened. While the defendant company did not need Grady Cooner's services for working on the concrete lift in pouring concrete, it did need his services or the services of someone to perform the act of notifying Sisk's wife. This service enabled the company to complete the emergency job after the usual working hours by keeping Charlie Sisk on the job to do the special work required by the company. This special work could not be delayed once the pouring of the concrete was commenced and Sisk was certainly needed for the purpose. In fact according to the proof this work continued until well into the early hours of the next morning. The court found that the act of Grady Cooner in going to notify Charlie Sisk's wife was expressly authorized by Sisk and impliedly authorized, acquiesced in and accepted by the defendant company. The court found that the trip by Grady Cooner was in the company's interest and the making of the trip by Grady Cooner was reasonably related to his employer's business or work. The court found that Grady Cooner was engaged in an act of service naturally related to the company's business and that Grady Cooner by making this trip to Cordova did not take himself out of the scope of his employment as he was performing an act necessary to be done by someone for his employer and was either doing the work or performing a service he was engaged to do or perform.

■ When there is any legal evidence to support the findings of fact by the trial court in a proceeding of this kind, such findings are conclusive and will not be disturbed by the appellate court. Nor will such findings be disturbed. because of mistakes made by the trial court in passing upon the weight of the evidence. But if the findings are not supported by any legal evidence, then such finding cannot be a basis for a judgment awarding compensation under the Workmen's Compensation Act. A total lack of evidence on the trial to support the finding of a material fact becomes a question of law which the appellate court will review. Woodward Iron Co. v. Dean, 217 Ala. 530, 117 So. 52, 60 A.L.R. 536; Ex parte Big Four Mining Co., 213 Ala. 305, 104 So. 764; Bryant v. Central Foundry Co., 217 Ala. 332, 116 So. 345.

■ This court has often pointed out that the Workmen's Compensation Act, being remedial in nature, should be given a liberal construction to accomplish its beneficent purposes. Sloss-Sheffield Steel & Iron Co. v. Nations, 236 Ala. 571, 183 So. 871, 119 A.L.R. 1403; Swift & Co. v. Rolling, 252 Ala. 536, 42 So.2d 6; Ex parte Terry, 211 Ala. 418, 100 So. 768. And we have further held that the act must be liberally construed and all reasonable doubt resolved in favor of the employee. National Cast Iron Pipe Co. v. Higginbotham, 216 Ala. 129, 112 So. 734; Mobile Liners v. McConnell, 220 Ala. 562, 126 So. 626. Furthermore liberal statutory definitions of employer and employee control in incidents pertaining to workmen's compensation to the extent that they modify the common law governing master and servant. Sloss-Sheffield Steel & Iron Co. v. Crim, 219 Ala. 148, 121 So. 408; Martin v. Republic Steel Co., 226 Ala. 209, 146 So. 276.

■■ The decisions of this court also show that an employee's injury arises out of and in the course of his employment when he is either doing the work or performing the services he was engaged to do or is engaged in an act or service naturally related thereto such as a reasonable judgment would refer to the express or implied elements of the contract of employment. Ex parte Majestic Coal Co., 208 Ala. 86, 93 So. 728; Ex parte Louisville & N. R. Co.,

208 Ala. 216, 94 So. 289; Sloss-Sheffield Steel & Iron Co. v. Thomas, 220 Ala. 686, 127 So. 165; Ex parte Terry, supra. Furthermore whether the work was reasonably related to the employee's duties and whether done in good faith in furtherance of the employer's business are recognized tests of whether the resulting injury arose out of the employment. Vickers v. Alabama Power Co., 218 Ala. 107, 117 So. 650; Mobile Liners v. McConnell, supra. In Ex parte Majestic Coal Co., supra, this court said: " * * * What he was engaged in doing was for his master's benefit, and to push on his work. If a workman depart temporarily from his usual vocation to perform some act necessary to be done by some one for his master, he does not cease to be acting in the course of his employment. He is then acting for his master, not for himself. A rule of law which puts such an employé outside his usual course of employment, and so deprived him of his right to compensation for an injury suffered, would punish energy and loyalty and helpfulness and promote sloth and inactivity in employes. * * * The rule would be impractical. One trade must occasionally overlap another, if the work is to go on expeditiously and productively." [208 Ala. 86, 93 So. 730.]

There is testimony in the case tending to show that the decedent had never checked out and that his regular working hours were not at an end when he met his untimely death. The bookkeeper Curtis E. Flatt testified that according to his knowledge the time card of Grady Cooner had not been punched so as to show that Grady Cooner had checked out. However, there are cases in which compensation has been allowed even though working hours had not begun or had ended. For example we note the following: Barnett v. Britling Cafeteria Co., 225 Ala. 462, 143 So. 813, 85 A.L.R. 85; Benoit Coal Mining Co. v. Moore, 215 Ala. 220, 221, 109 So. 878; Jett v. Turner, 215 Ala. 352, 110 So. 702.

It is agued that the act of Grady Cooner in driving the car at the time of his death was a voluntary act and beyond the scope of his employment. The evidence tends to show, however, that the act was done with the knowledge and acquiescence of his employer. In Republic Iron & Steel Co. v. Quinton, 194 Ala. 126, 69 So. 604, 606, this court affirmed a judgment for the plaintiff in a case involving a situation where an employee of a mine was killed while aiding in work outside of his regular employment and when it appeared that the superior in charge tacitly accepted the service of the employee. This court among other things said:

"Some of the testimony indicates that he was there for several minutes, and that he had hold of some of the timbers before he handled the wire. It was open to the jury to reasonably infer either that Lang heard Vandiver order the intestate to remain and assist, or [also] that he knew he was present and engaged in assisting, and hence that Lang tacitly assented thereto; and they might have so found in spite of Lang's denial of such knowledge.

"It is obvious that, if Lang tacitly accepted the service of the intestate in this behalf, though it was foreign to his regular employment, such service was authorized in a legal sense, and the intestate was thereby brought within the protection of those rules of law which shelter servants against the negligence of their master."

The foregoing case was an action at common law. Certainly under the Workmen's Compensation Act the principle would be no less favorable to the employee.

In Sloss-Sheffield Steel & Iron Co. v. Jones, 220 Ala. 10, 123 So. 201, this court said: "The evidence has been carefully read by the court in consultation, and we find no testimony justifying any reasonable inference therefrom that his change of work from that of mule driver to trammer was authorized either expressly or impliedly or was with the knowledge or consent or acquiescence of anyone in charge of the work at defendant's mine, * * *."

A similar case is Bullard v. Cullman Heading Co., 220 Ala. 143, 124 So. 200, 201, in which this court said that the defendant would not be accountable "if the service

plaintiff was performing at the time of the injury was outside the scope of his employment, or was not directed or acquiesced in by a representative of the defendant authorized to control such service." See also Southern Cotton Oil Co. v. Bruce, 249 Ala. 675, 32 So.2d 666.

■ Upon consideration of the matter we do not think it necessary to pass upon the authority of Charlie Sisk with reference to the trip of Grady Cooner to Cordova as we think that under all the facts and circumstances in the case in the light of the foregoing decisions in this court, Grady Cooner was acting within the course of his employment when he met his untimely end.

■ It is insisted by the petitioner that the testimony of Mrs. Grady Cooner shows that she had received the sum of $500 in settlement of her claim for damages against the Missala Bus Lines, whose bus it was that collided with the automobile driven by Grady Cooner resulting in his death. It is claimed that under § 312, Title 26, Code of 1940, credit for this amount should have been given by the court on the amount awarded as compensation. It does not appear from our examination of the record that this question was raised either on the trial of the cause or by a motion to set aside the award for excessiveness after the trial court had acted. Since the trial court should have had an opportunity to pass on the question, we will not put the court in error in this regard. We do not think that the petitioner can raise this question for the first time on this appeal. W. T. Rawleigh Co. v. Hannon, 32 Ala. App. 147, 22 So.2d 603; Central of Georgia Railway Co. v. Chambers, 197 Ala. 93, 72 So. 351; North Carolina Mut. Life Ins. Co. v. Terrell, 227 Ala. 410, 150 So. 318, 89 A. L.R. 1459; Southern Cement Co. v. Walthall, 217 Ala. 645, 117 So. 17; Birmingham Clay Products Co. v. White, 226 Ala. 89, 145 So. 668.

The judgment of the lower court is affirmed.

Affirmed.

FOSTER, LIVINGSTON and SIMPSON, JJ., concur.