## ASSOCIATED EMPLOYERS' RECIPROCAL v. SIMMONS et ux. (No. 1702.)

(Court of Civil Appeals of Texas. El Paso. May 14, 1925. Rehearing Denied June 4, 1925.)

**1. Master and servant �gă388—Partial dependency on son sufficient to entitle parents to compensation.**

That parents were at least partially dependent on their deceased son, and that he contributed to their support, is sufficient to entitle them to compensation for his death, under Workmen's Compensation Act (Vernon's Ann. Civ. St. Supp. 1918, arts. 5246—1 to 5246—91).

**2. Master and servant ⟆375(1)—Bathing in employer's bunkhouse bathroom after day's work held not act in employer's service.**

Employee's removal of dirt and grease from his person in bathroom of employer's bunkhouse after finishing day's work *held* not act in employer's service or having to do with and originating in employer's work, within Workmen's Compensation Act (Vernon's Ann. Civ, St. Supp. 1918, arts. 5246—1 to 5246—91).

Appeal from District Court, Stephens County; C. O. Hamlin, Judge.

Suit by G. F. Simmons and wife against the Associated Employers' Reciprocal to set aside ruling of Industrial Accident Board on plaintiff's claim for compensation under the Workmen's Compensation Act for the death of Oliver L. Simmons, employee. Judgment for plaintiffs, and defendant appeals. Reversed and rendered.

Levy & Evans, of Fort Worth, and John F. Evans, of Breckenridge, for appellant.

E. W. Bounds, of Fort Worth, and Will R. Saunders, of Breckenridge, for appellees.

WALTHALL, J. This suit was brought by appellees, G. F. Simmons and wife, Angelina Simmons, against appellant, Associated Employers' Reciprocal, an insurance association, to set aside the final ruling and decision of the industrial accident board on their claim for compensation under the Texas Workmen's Compensation Act (Vernon's Ann. Civ. St. Supp. 1918, arts. 5246—1 to 5246—91) for the death of their son, Oliver L. Simmons, in Stephens county, Tex., on May 20, 1922, who at that time was an employee of the Standard Tank & Steel Works.

On that day, and prior thereto, the Standard Tank & Steel Works was a subscriber under the terms and provisions of the Texas Workmen's Compensation Act, and held a policy of compensation insurance issued by the Associated Employers' Reciprocal, obligating it to pay the compensation provided by said act under its provisions.

The Texas Workmen's Compensation Act, articles 5246—5 to and including 5246—82, provides for compensation for the death of an employee from "an injury sustained in the course of his employment," and declares that "all other injuries of every kind and character," except certain enumerated injuries having no application to the injury involved here, shall be included within "injury sustained in the course of his employment," when having to do with and originating in the work, business, trade, or profession of the employer, received by an employee while engaged in or about the furtherance of the affairs or business of the employer whether upon the employer's premises or elsewhere."

The case was tried to a jury, and on special issues submitted and found, the court entered judgment in favor of appellees for the lump sum of $4,577.42, from which this appeal is prosecuted.

The principal contention made by appellant is twofold: First, that Oliver L. Simmons' injury did not have "to do with and originate in the work, business, trade, or profession of the employer, received by the employee while engaged in or about the furtherance of the affairs or business of the employer"; second, the evidence does not sufficiently show that appellees were dependent upon the means furnished by their deceased son, as that term is used in the compensation act, and for reasons stated, it was error on the part of the court to refuse to give the requested peremptory instruction in its favor.

[1] Replying first to the second part of the proposition, the evidence clearly shows that appellees were dependent in part, at least, upon their deceased son, and that he contributed to their support. Texas Employers' Ins. Ass'n v. Peterson (Tex. Civ. App.) 251 S. W. 572; Southern Surety Co. v. Hibbs (Tex. Civ. App.) 221 S. W. 303; Southern Surety Co. v. Weaver (Tex. Civ. App.) 260 S. W. 625.

[2] The first ground is not so easy of solution. Without quoting the evidence in full, on the controverted facts, it is sufficient to establish the following: Oliver L. Simmons, the deceased, at the time of the accident causing his death, was an employee of the Standard Tank & Steel Works, and had been for some four months; the Standard Tank & Steel Works carried a compensation insurance policy with appellant; deceased was receiving for his services $7 per day; his "duties were to work in the setting of tanks for the company and to do any other kind of work that was necessary in the setting of tanks"; he was not married and lived in the "bunkhouse" of his employer, used for sleeping purposes by some of the employees; the bunkhouse was in Breckenridge and in connection with the employer's yard, the yard used for carrying the stock of tank material; the bunkhouse was furnished by his employer, and deceased paid nothing for its

use; a company bathroom was adjoining the bunkhouse, and was used by deceased and other employees by permission of his employer in connection with the bunkhouse in cleaning up after their day's work; deceased and other employees were subject to call at any time, day or night, by their employer and their duties then were to do whatever their employer told them to do; the men were not required to be at the bunkhouse or at any particular place to be available for special call, they were at liberty to go anywhere they wanted to, nor was it a part of the contract with the men that they go on a night rush job; they were not subject to go unless they elected to themselves—employees with families did not want to.

On May 20, 1922, deceased returned from his day's work about 5 o'clock in the afternoon, went to the bunkhouse to get out clean clothes, and then went to the bathroom for the purpose of taking a bath and cleaning up; at the request of deceased, one of the men present handed deceased a pan of gasoline to take into the bathroom for use in taking off the grease and dirt on deceased; soon after deceased took the gasoline into the bathroom witness heard a report of the gasoline igniting, and immediately deceased rushed from the bathroom his body enveloped in flames; the cause of the gasoline igniting is not shown; the work deceased had to do on the day he was burned was dirty and greasy and would naturally get him and his overalls very dirty and greasy; it was necessary for deceased to have a bath and clean up before he could occupy a bed at the bunkhouse; deceased was not required to stay at the bunkhouse, nor was he required to take his bath at the bunkhouse bathroom, both were optional with him, he was not charged for the use of either; it was agreed that deceased died shortly thereafter as a consequence of his burns; employees would make 9 hours work, leaving the company's yard at 7 a. m. on the employer's time and return at 5 on their own time, that is to say, would start at 7 and stop at 5; the work of deceased as a tank setter would range within a radius of 15 miles from Breckenridge, and done on leases where it was necessary to put up tanks; the equipment at the bunkhouse furnished by the employer consisted of several beds, chairs, mattresses, bed linens, laundry of bed linens, a small heater, and small tank with gas heater under it, and two showers. At and before the accident a gasoline tank was kept in the employer's yard to keep gasoline to fill cars; employees were not authorized to use gasoline to wash up and clean dirt and grease off of themselves, but they had been instructed not to use gasoline around the premises, and deceased had been so instructed; deceased at the time of the accident had not been called out for additional or extra service.

Appellees insist that as a natural result of the kind of work deceased was required to do it was necessary that he use some method of cleansing himself before he could partake of the necessities and comforts of life, or further pursue his duties in case he should be called on a rush job, and for that reason deceased was not only in the "course of his employment" while removing the dirt and grease from his person, but doing so was a part of his duty to his employers, and that an injury received, as was that of deceased, could be said as "having to do with and originating in the work * * * of the employer * * * while engaged in or about the furtherance of the affairs or business" of the employer.

The question is presented: Was the act of the removal of the dirt and grease from the person of the deceased in the taking of the bath by the deceased employee, under the circumstances stated, an act in the performance of the employer's work of the setting of tanks? If the act of taking the bath to remove the dirt and grease from his person was an act in performance of the employer's task of setting the tanks, we think the injury to deceased in the ignition of the gasoline had to do with and originated in the work of the employer, while engaged in or about the furtherance of the affairs of the employer in setting the tanks.

We are of the opinion that after the deceased employee had finished his work of setting the tanks for the day, and had gone from the locality of his work to the bunkhouse, the act of removing the dirt and grease from his person, would not, under the facts disclosed by the record, be an act in the service of the employer, and did not have to do with and originate in the work of the employer. We think it would serve no useful purpose to review the cases to which we are referred by appellees as sustaining their contention.

The case insisted upon as analogous to the case at bar is that of Sexton v. Public Service Commission, City of New York, 180 App. Div. 111, 167 N. Y. S. 493. In that case Sexton was supervising the construction of a subway. His work was in the tunnel of the subway, except at the end of the month when he worked on estimates. Sexton was directed to make certain surveys, and while doing so, became very dirty. He left the subway at 11:15 o'clock, a. m. on the day of his injury, and it was then his duty to go to the engineer's field office, about a block away, and make estimates, and it was necessary, before doing so, to remove his filthy garments and cleanse himself. It was usual to have shower baths provided in such offices, but no such bath was provided here, and in the absence of shower baths provided the office, Sexton and his assistant had improvised a shower bath at the office. While standing on a mar-

ble slab in the shower bath his foot slipped and he sustained injuries. In considering the case, the court overruled the contention that the accident did not arise out of and in the course of the employment, but held in substance, that the evidence and findings show that the nature of the employment was such that the employee became very dirty and covered with filth to such extent that he had to throw away his clothes when he got through; that the bath was a necessity arising out of the employment, and to enable him to continue it; that leaving the subway at 11:15 a. m. it was then his duty to go to the field office and there continue his work, but could not continue his work in the field office in his dirty, filthy condition, and it was therefore his duty to his employer as soon as possible to begin his work in the field office. It was held that his work as a subway builder continued until the filth was removed, so that he could perform the other duties at the field office.

We think the case is distinguishable in material particulars from the instant case, in that, in the Sexton Case the work of the employee in the subway and his work in the field office were continuous during the working hours of the same day, and that the time of taking the shower bath was on his employer's time, and it was his duty to his employer and a part of his work for the day, and, to enable him to continue his day's work, the bath was necessary. The bath was essential to the continuance of his work for the day, in fact, a part of his day's work, as much so as was his work in the subway or in the field office. Had Sexton slipped and received injury while working in the subway or while working in the field office, or in going from one service to the other, such injury would certainly have arisen out of and in connection with his employment, and we see no reason why it should not be so also when his injury was received during the time of his service for the day in performing the necessary service of taking the bath.

In the case at bar the unit of service was a day; the day's work had been performed; the employee had gone to his place for the night; he had not been called out for a continuous or extra service; so far as the record shows the employee would owe the employer no further duty, nor did the employer owe the employee further duty until the relation of employee and employer had been resumed in the work of another day.

In our opinion the facts do not show a cause of action, and the court should have given the requested instruction.

Other questions are presented, but the view we entertain, as above, renders it unnecessary to review them. For the reason stated, the case is reversed, and here rendered for appellant.

Reversed and rendered.