5 So.2d 624

HAYES v. ALABAMA BY-PRODUCTS CORPORATION.

6 Div. 906.

Supreme Court of Alabama.

Jan. 15, 1942.

Cabaniss & Johnston and Newton H. Debardeleben, all of Birmingham, for respondent.

Hugh A. Locke and Andrew W. Griffin, both of Birmingham, for petitioner.

150

THOMAS, Justice.

This action arises under the Workmen's Compensation Act of Alabama.

The decree of the circuit court denying appellant compensation for the death of her son Talford Hayes was entered June 30, 1941. The case comes here on writ of certiorari.

The question before this court is whether an accident arises out of and in the course of employment when it occurs after the employee has quit work for the day and has left the premises where his services are rendered and while he is in the process of taking a shower at a boarding house leased and operated by a third person who permits the employee to bathe there for one dollar a month.

Hayes was employed as a supplyman in the Company's No. 7 mine at Praco. He worked a regular shift of seven hours beginning at ten o'clock at night and ending at 5 o'clock in the morning. Shortly before 10 o'clock he was required to check in at the camp lamp house and receive his mine lamp. From there he would go to the timber yard where his day's work began. His work consisted of loading timber on a tram trip at the timber yard, riding the loaded trip into the mine, and unloading the timber at various timber yards inside the mine. His day's employment terminated at five o'clock in the morning. At that time he would catch a man-trip to the mouth of the mine from whence he walked to the lamp house, where he deposited his lamp, and checked off duty. He had no further services to perform for the company after he checked out at the lamp house.

The company provided no bathing facilities for its employees, had no requirement that they bathe, and made no effort to regulate the time or the place they bathed. This, it is urged, was the scope of his employment.

On the morning of the accident Hayes quit work at five o'clock, caught a man-trip, deposited his lamp at the lamp house, and checked off duty. After leaving the lamp house, he walked to the small shower-house behind Benson's boarding house, which is about 612 feet from the same and while he was undressing in this shower-house, preparing to take a bath, the hot water tank for the shower exploded and scalded him. This accident occurred about five-thirty on the morning of January 26, 1939, and the said Hayes died the following day.

The ownership of and operation of the shower-house in question is without dispute. It is stated that the said shower-house is a small frame structure located in the back yard of a large dwelling which was leased from the company by Jim Benson in December, 1933. Benson's house is one of about 800 company houses located at Praco and is on company property. Benson pays the defendant a flat monthly rental for the premises. At the time Benson moved in there was no shower in the frame outhouse. There is evidence in the showing by Arthur Harbin and C. M. Handley that several years previous to the time when Benson moved in, there had been shower equipment in the outhouse. The trial court stated, however, that in its opinion there was no dispute in the evidence that this equipment had been removed prior to the time of Benson's lease, who, at his own expense and without consulting or informing defendant of his actions, installed the shower. He purchased the hot water tank from Sears Roebuck, used pipe in its installation which he had brought with him to Praco from a mine

he formerly operated near Tuscaloosa, and began operating the shower-house. Houston Eddins, the company plumber or pipeman, assisted Benson in installing the said equipment. Subsequent to the installation of the equipment, Eddins has repaired it several times and was paid for said repairs by Benson.

Benson buys the coal used in heating the shower water, provides the labor for building the fire in the water heater and uses water furnished him by the company under his lease of the premises.

At the request of some of the miners who lived outside of Praco, Benson permitted them to use the shower for a dollar per month and at the time of the accident there were five or six of these outside men, including Hayes, using the shower. As to this the record recites that:

"Mr. Locke. Do you admit that the five or six men that were bathing there were all employees of the company and going there for their baths after they got out of the mine?

"Mr. DeBardeleben. Yes, sir, paying a dollar a month for the privilege, and were, in addition to Benson's boarders who boarded with him, using the bath house.

"Mr. Locke. And they were regularly employed in the mines and bathed there?

"Mr. DeBardeleben. Yes, sir.

"Mr. Locke. And you had the other bath houses?

"Mr. DeBardeleben. We have testimony the company provides no bathing facilities at all.

"Mr. Locke. The company had permitted these bathing places at different places?

"Mr. DeBardeleben. I don't know what you mean by 'permitted.' The company hadn't refused to allow them—

"Mr. Locke. The company knew they were operating and interposed no objections?

"Mr. DeBardeleben. That is true. We are also going to give testimony eighty five per cent of the miners employed at this mine bathed at their own homes at the time of the accident to Hayes, and Hayes bathed at his own home until six or eight months before this accident.

"Mr. Griffin. You will also admit he left the clothes he used to work in the mines in the bath house and put on his street clothes and came back and left his street clothes and put on his work clothes?

"Mr. DeBardeleben. I don't know whether he left his working clothes or not. * * *."

About six months prior to the accident Hayes made an agreement with Benson whereby he was permitted to use Benson's shower house under the terms of this agreement at the time the accident occurred. The company exercised no supervision or control over the operation of the shower-house. Benson did not inform the company of his actions in installing the shower equipment and in permitting five or six miners other than his roomers to use the shower-house. Benson retained the entire proceeds from the shower-house and did not account to the company therefor.

Plaintiff's counsel admits that at the time Harbin and Weeds, the Superintendent of the company, discussed the use of the house as a bathhouse, Harbin did not work for the defendant. He testified, however, that in his best judgment the coil and heating plant for the shower were the same which were originally installed by the company while he was in charge of the bathhouse. The witness Handley further made it plain that Harbin had formerly operated the bathhouse and it was then known as "Benson's Bathhouse" and when Harbin left the company's service, Handley discussed the operation of the bathhouse.

The showing for the witness Arthur Harbin, from his testimony, was that he worked for the company before 1929 and then operated the bathhouse which was used by the employees of defendant who were boarding with him; that they put on their work clothes when they were going into the mines and worked for defendant; that when employees "who room" with witness came out of the mines they used that bathhouse to take a bath in and put on their street clothes, leaving their work clothes there; that the bathhouse was originally built by the company while Mr. House was superintendent; that it was so used. It is very clear from this testimony that only the employees of the company who roomed with witness used this bathhouse for the three or four years while witness was there.

The evidence further shows that another bathhouse near the mines was run as the "Bookout Bathhouse" and it was

equipped with two showers and used by some of the company's employees and at the time of the trial the company deducted the fees charged by Bookout for bathing at his place. The testimony shows that no such fees charged by Benson for bathing at his place were deducted by the company from the men's wages.

The finding of the trial court was that the "accident which caused the death of Talford Hayes, deceased, was not an accident arising out of and in the course of his employment by the defendant and therefore the plaintiff is not entitled to compensation from the defendant under the Workmen's Compensation Law of the State of Alabama."

There was a sufficient finding of fact to support the judgment rendered.

In Rockwood Alabama Stone Co. v. Lawler, 223 Ala. 336, 135 So. 569, it is held:

"On certiorari to review compensation award, finding of fact being mere conclusion, bill of exceptions held permissible.

"On certiorari to review compensation award, finding of fact being mere conclusion, Supreme Court may consider bill of exceptions to determine as matter of law whether any evidence sustained finding."

It is declared in recent decisions in this jurisdiction that on certiorari, this court will not weigh the evidence, but will only look to the bill of exceptions to see if there is any evidence to support the judgment rendered. Warrior Stone and Const. Co. et al. v. DeFoor, 241 Ala. 227, 2 So.2d 430.

It is required by statute and our decisions that the compensable injury must arise from a risk reasonably incidental to the employment. Code of Alabama of 1923, § 7596(j); Code 1940, Tit. 26, § 262(j).

In Sloss-Sheffield Steel & Iron Co. v. Thomas, 220 Ala. 686, 127 So. 165, 166, it is declared:

"An accident is compensable if the employee was 'either doing the work or performing the service he was engaged to do or perform or was engaged in an act or service naturally related thereto.' This includes 'the movement of the employee in entering at the appropriate time, the employer's premises to discharge his function; his preparation to begin and to terminate his actual service; and to leave the premises at an appropriate time after the completion of his actual service.' * * *

"The term here used, the 'premises' of the employer, has reference to the premises at or near which the service is to be rendered. Ex parte Louisville & N. R. Co., supra [208 Ala. 216, 94 So. 289, 292]; Shickley v. Philadelphia & Reading C. & I. Co., 274 Pa. 360, 118 A. 255; 1 Honnold on Workmen's Compensation, § 109, pp. 368, 370, § 111, p. 386. An accident to a workman on the way to work is not ordinarily in the course of employment, * * * as when transported at his own expense, * * *."

See also: Prayther v. Deepwater Coal & Iron Co., 216 Ala. 579, 114 So. 194; Barnett v. Britling Cafeteria Co., 225 Ala. 462, 143 So. 813, 85 A.L.R. 85; Exchange Distributing Co. v. Oslin, 229 Ala. 547, 158 So. 743; House v. Louisville & N. R. R. Co., 208 Ala. 216, 94 So. 289.

It follows from the fact that the bathing facilities, being used by Hayes at the time of his accident, were not furnished by his employer, but by a third person for a charge of one dollar a month, Hayes' injury cannot be said to have arisen out of and in the course of his employment.

In Jett v. Turner, 215 Ala. 352, 110 So. 702, 704, it is observed: "While the employee is being transported by the employer pursuant to the contract of employment, it cannot be questioned they have entered upon the day's work wherein mutual duties of employer and employee are presently being performed. The pay of the employee has begun, not in wages, but in service incident to the mutual relation created by contract; his going to or from the place of work is incident to his service as per contract; the hazard of the moment is directly due to relation of employer and employee; he is at a place where he is called upon to be, where of right he may be in the performance of contractual duty."

Thus in the case quoted above the defendant furnished the employee free transportation from his home to his place of work and back as part of the consideration for his services. The employee was injured while being transported home from work in defendant's car and the court held as above indicated. Where the employer does not furnish free bathing facilities or free transportation as part of the contract

of employment, and such services are furnished by a third person, paid for by the employee himself, the rationale used by the court above does not apply and an accident which occurs while the employee is bathing or travelling at his own expense does not arise out of or in the course of employment. This distinction was clearly drawn by this Court in Ex parte American Fuel, 210 Ala. 229, 97 So. 711, 713. In that case the defendant company had operated a bus line to transport its employees residing in Warrior to and from their work at defendant's mines in Beltona. The defendant charged each employee twenty-five cents a round trip. It employed one Whaley to drive the bus as well as to do other work. Shortly before the accident in question defendant turned the bus line over to Whaley under an agreement whereby he was to have exclusive control of the operation of the line, pay all expenses and maintenance including repairs, gas and oil, and receive all moneys collected from the miners for use of the service. The defendant agreed to collect his fares for him on a check-off. On the afternoon that plaintiff's deceased was killed he quit work, came out of the mines and immediately caught the bus. The bus overturned on the way to Warrior and killed the deceased employee. The court declared that where the employee "was not upon the premises * * * nor was he injured during his hours of service; nor * * * at a place where the duties of his service required him to be," it was held no compensation could be allowed.

Appellant places reliance on the case of Overton v. Belcher, 232 Ala. 396, 168 So. 442. Just as in the case of Jett v. Turner, supra, the injured employee was permitted to ride home from work on his employer's truck. The transportation was afforded him free of charge by his employer and the accident occurred while he was availing himself of that free service provided by his employer and was compensable under the doctrine of Jett v. Turner, supra. However, the Overton case and the Jett case are distinguishable from the American Fuel case and the instant case because here the employee was injured when using services not provided free by the employer, but rather provided by a third person at a charge to the employee.

Section 7596(j) of the Code of 1923, Code 1940, Tit. 26, § 262(j), is as follows: "Personal injuries, etc.—Without otherwise affecting either the meaning or interpretation of the abridged clause, injuries by an accident arising out of and in the course of his employment, it is hereby declared: *Not to cover workmen except while engaged in, on, or about the premises where their services are being performed, or where their service requires their presence as a part of such service at the time of the accident, and during the hours of service as such workmen,* * * *."* [Italics supplied.]

The above mentioned section establishes two criteria by which to determine whether an accident is compensable within the interpretations of our decisions. First, the accident must occur during the time of service of the workman. The undisputed evidence shows that Hayes' hours of service terminated when he left the lamphouse, about a half hour prior to the accident. Second, the accident must occur while the workman is about the premises where his services are being performed and where his services require his presence. The measurements shown on the map indicate that the accident occurred at a point 612 feet distant from the lamphouse, the nearest point where Hayes' presence was required by his services. The record contains a copy of the map indicated, which is certified to this court under Rule 47, Code 1940, Tit. 7 Appendix. It has been conceded that the foregoing observations are true as to the distance indicated.

Appellee indicates the cases of Industrial Commission v. Rocky Mt. Fuel Co. et al., 1941, 107 Colo. 226, 110 P.2d 654, and Associated Employers' Reciprocal v. Simmons, Tex.Civ.App.1925, 273 S.W. 686, as authorities, based on facts like those in the instant case, and where the right to recover compensation is denied. In Industrial Commission v. Rocky Mt. Fuel Co., supra [107 Colo. 226, 110 P.2d 656], it is said: "It is clear that 'at the time of the accident' claimant's employment in the service of the company for that day had ended. At that time he was not performing any service for employer; he was not doing what he expressly or impliedly was directed to do. Security State Bank v. Propst, 99 Colo. 67, 59 P.2d 798. It was optional with him to bathe on the premises and in the building provided by employer or to return to his home for that purpose. 71 C.J., pp. 695, 721; State Fund v. Industrial Commission, 98 Colo. 563, 58

P.2d 759. If the accident had occurred while claimant was changing his clothes at the locker, or if he had not ceased his employment for the day, and was required to return to his work after visiting the bathhouse, a different question would be presented. * * *" To like effect is the Texas case cited above.

It results from the foregoing that the judgment of the circuit court is affirmed and the petition for certiorari is denied.

Writ denied. Affirmed.

GARDNER, C. J., and BROWN and FOSTER, JJ., concur.