15 So.2d 705

**MALBIS BAKERY CO., Inc., v. COLLINS.**

1 Div. 196.

Supreme Court of Alabama.

Oct. 21, 1943.

Rehearing Denied Dec. 16, 1943.

Lyons & Thomas, of Mobile, for appellant.

Wm. G. Caffey, of Mobile, for appellee.

**STAKELY, Justice.**

This proceeding is a certiorari in a case claiming compensation under the Workmen's Compensation Act of Alabama, Code 1940, Title 26, Section 253 et seq. To the complaint of the plaintiff, David Collins, the defendant, Malbis Bakery, filed its answer in which it denied that the plaintiff was injured by an accident arising out of and in the course of his employment and alleged in substance that the plaintiff was guilty of wilful misconduct which proximately contributed to his injuries in abandoning his duties as driver of the truck of the defendant and permitting Ashton D. Marsh, a sailor, who was not an employee of the defendant, to drive the truck, the plaintiff being in no wise authorized by the defendant to permit anyone else to drive the truck. The answer further alleged in substance that the plaintiff was guilty of wilful violation of a reasonable rule of the defendant, of which the plaintiff had notice, which prohibited anyone not an employee of the defendant from riding in the truck of the defendant at the time of the accident, and that violation of this rule was the proximate cause of the accident. The answer further alleged in substance that the plaintiff was guilty of wilful violation of law in that he allowed four persons, including himself, to ride on the front seat of the truck and that such action so crowded the driver and impaired his movements that he drove without due caution and circumspection and in a manner so as to endanger or be likely to endanger persons or property.

It was admitted in open court by the parties that the relationship of employer and employee was such as to bring them under the Workmen's Compensation Act of Alabama, if the accident arose out of and in the course of plaintiff's employment.

The trial court in substance found that the plaintiff on March 24, 1942, was injured on U. S. Highway 90 near Spanish Fort in Baldwin County, Alabama, in an accident arising out of his employment with the defendant, as a salesman and truck driver. The trial court further found in substance that although the plaintiff permitted the sailor, Ashton D. Marsh, to drive the truck at the time of the accident, the plaintiff did not abandon the scope and sphere of his employment and was not guilty of wilful wrong or wilful violation of the rule of the defendant in allowing persons not employees of the defendant to ride in the truck and was not guilty of wilful violation of the law in allowing four persons including himself, to ride on the front seat of the truck.

The trial court further found that as a proximate result of the accident, the plaintiff's pelvic bone on the left side was fractured and pushed upward and backward with an anterior and posterior dislocation and in knitting has remained permanently dislocated and out of line; that plaintiff's left leg has thereby been permanently shortened at least an inch; that plaintiff's back has been permanently injured and will never be normal and that plaintiff as a result of his injuries was totally disabled for a period of forty weeks, ending December 22, 1942; that from said date he has been and in the future will be permanently partially disabled to the extent of 33⅓ per cent.

■ It is insisted by the petitioner that there was no evidence to support the facts and conclusions as determined by the court.

Accordingly, this Court has looked to the Bill of Exceptions to see if there is any evidence to support the conclusions reached by the trial court. This Court will not weigh the evidence as to any fact found by the trial court and if on any reasonable view of the evidence, the conclusions of the trial court are supported, then the finding and judgment of the trial court will not be disturbed. Sloss-Sheffield Steel & Iron Co. v. Alexander, 241 Ala. 476, 3 So.2d 46; Hayes v. Alabama By-Products Corp., 242 Ala. 148, 5 So.2d 624; Alabama By-Products Corp. v. Winters, 234 Ala. 566, 176 So. 183; Ford v. Crystal Laundry Co., 238 Ala. 187, 189 So. 730.

All of the evidence in the case has been carefully examined. There is no need to set it out here in detail. Suffice it to say that there was evidence tending to show that the plaintiff was employed by the defendant as a salesman of its bakery products on a route from Mobile, Alabama, to Pensacola, Florida; that it was his duty under his employment as such salesman to obtain the products which he sold at the defendant's bakery in Mobile where they were loaded on a truck; that in this truck, which the salesman drove as a part of his duties, the defendant's bakery products were transported from Mobile to various points on the route, where deliveries were made by the plaintiff as such salesman; that on the occasion in question, when the plaintiff went to the bakery to get his truck about one o'clock in the morning, he found a sailor named Marsh and a young woman waiting to get a ride in the truck to Pensacola; that one Sam Pappas, an employee of the defendant, instructed him to let the two who had come to thei bakery and another young woman who was at the bus station ride in the truck to Pensacola; that Sam Pappas, who was a shipping clerk, was the only one at the bakery after seven o'clock in the evening representing the defendant, with authority to run its business and was the one who usually gave plaintiff orders and instructions when he went out, including instructions from time to time to ride sailors to Pensacola, and in this instance to let the sailor drive because plaintiff was tired from having been on duty for eighteen hours; that plaintiff had no knowledge of any rules of the defendant about the operation of the truck or who should ride in the truck.

The evidence further tended to show that after making one delivery in Mobile and while on the route, plaintiff requested Marsh to drive the truck because he was tired from long hours on duty; that the truck, with Marsh driving, loaded with the products of the defendant, which the plaintiff was charged with the duty of transporting, selling, and delivering, proceeded on its regular route; that after the truck had so proceeded about a mile, the truck overturned on a curve in the road and plaintiff was injured.

It is insisted by the petitioner that the injuries of the plaintiff did not arise out of and in the course of his employment. The basis for its position is that by permitting the sailor, Ashton D. Marsh, to relieve him in driving the truck, the plaintiff abandoned his employment to such an extent as to take him entirely beyond the scope or course of employment. There were tendencies of the evidence which showed that the scope and course of plaintiff's employment was to receive, transport on his route between Mobile and Pensacola, and deliver defendant's bakery products.

According to tendencies of the evidence, when Ashton Marsh took over the driving, the truck continued on its regular route in the transportation of the products of the bakery for sale by the plaintiff as the salesman of petitioner. The plaintiff did not abandon the truck. He did not abandon the transportation of petitioner's products in the truck. He did not abandon his prescribed route nor the duty of selling and delivery on this route. On the contrary, up to the time of his injuries, plaintiff remained in the truck in furtherance of his duty to transport, sell and deliver the products of petitioner.

Accordingly, we think it unnecessary to determine the extent of the authority of Sam Pappas to see if he had the right to allow the plaintiff to stop driving and permit Ashton Marsh to drive. Even though the plaintiff, contrary to instructions, permitted Ashton Marsh to drive, the plaintiff did not thereby withdraw from the scope and sphere of his employment. The prohibition against permitting another to drive did not limit the sphere of employment. It dealt only with conduct within that sphere.

In Moss v. Hamilton, 234 Ala. 181, 174 So. 622, 623, the plaintiff was injured while on his way to his place of work along the usual and customary route. However, by riding on a motor in violation of the defendant's rule, it was claimed that the plain-

88

tiff "took himself outside the sphere of employment."

The Court said:

"Our authorities, as well as those elsewhere, have drawn a clear distinction between prohibitions which limit the sphere of employment, and prohibitions which deal only with conduct within that sphere. A transgression of a prohibition within this latter class leaves the sphere of employment where it was, and of consequence will not prevent recovery, while a transgression of the former class carries with it the result that the employee has gone outside of the sphere. In Jones v. Sloss-Sheffield Steel & Iron Co., supra [221 Ala. 547, 130 So. 74], upon which defendants lay much stress, the court but gave application to this distinction upon the facts presented. There the employee had gone into the slope of the mine, a dangerous, unlighted, and narrow place upon which trip cars were operated frequently and rapidly without lights, and which was forbidden to be used either to ride the trip cars or walk upon it. This prohibition was known to the employee, and the employer provided a walkway, called 'man-way,' as a means of ingress and egress to and from the mine for the use of the employees. The holding was that the employee had thus voluntarily placed himself in a prohibited zone of danger and outside the sphere of his employment.

"But in the instant case no such facts are presented. The employee was in no prohibited zone, but was on his way to work following the usual custom, and clearly within the sphere of his employment as he was being transported by his employer to his place of work.

"At best, therefore, all that can be said for defendants is that in being thus transported plaintiff violated the rule of prohibition against riding on the motor, a transgression of a prohibition within his sphere of employment, as distinguished from the Jones case, supra, where the transgression of the prohibition took the employee outside his sphere of employment."

In Alabama Concrete Pipe Co. v. Berry, 226 Ala. 204, 146 So. 271, 272, a truck upon which plaintiff was a helper broke down. Plaintiff thereafter left his truck and boarded another of defendant's trucks which was passing to go to a place where he could get water. The place was a half-mile from where his truck was stranded. Plaintiff stepped off the truck in which he thus took passage while it was still moving in violation of defendant's known rules. The Court held that the plaintiff's injury arose out of and in the course of his employment and said:

"Inasmuch as the deceased was within the course of his employment, and constructively within the sphere of the same, the question then arises: If it be true that deceased stepped off the truck, while it was still moving, and which was in violation of one of the defendant's rules governing its employees, in getting on and off moving trucks, does that fact, of itself, prevent a recovery of compensation? We think not.

"This court has drawn a line of demarkation between prohibitions which limit the sphere of employment and prohibitions which deal only with conduct within such sphere."

See also Blocton Cahaba Coal Co. v. Campbell, 219 Ala. 529, 122 So. 806.

Counsel for petitioner urge as an authority for the petitioner the decision in the case of Travelers Insurance Co. v. Taylor, 147 Fla. 210, 3 So.2d 381, decided by the Supreme Court of Florida by a divided court. But that case, we think, is clearly distinguishable from the case at bar. In the Florida case the salesman met his death while riding with a friend in his own car. At the time of his death he was not in the truck of his employer to fulfill the obligations he owed his employer.

█ It is insisted by petitioner that an employee is taken without the sphere of his employment by unnecessarily increasing the risk of injury to himself and that the conduct of the plaintiff had this effect. We do not think that this is the purpose or intent of the Workmen's Compensation Act. The test is not whether the employee's conduct has created a greater risk, but whether at the time of the accident he was acting within the sphere of his employment. Alabama Concrete Pipe Co. v. Berry, supra.

█ The trial court had the right to conclude that the injuries of the plaintiff were received while the plaintiff was acting within the scope and sphere of plaintiff's employment.

█ It is further insisted that the plaintiff was guilty of wilful violation of a rule of the defendant which prohibited anyone except employees of defendant from riding in defendant's trucks. This contention will not stand, however, for the reason, among other things, that there was evidence that the plaintiff had no knowledge of the rule.

The court, therefore, had the right to conclude that there was no wilful violation of the rule. Moss v. Hamilton, supra; Code 1940, Title 26, Section 270.

■ The evidence showed that four persons were riding on the front seat of the truck at the time of the accident. Accordingly, it is insisted by the petitioner that the injuries of the plaintiff were due to wilful violation of law. Code 1940, Title 36, Section 3. The statute, which it is claimed was violated, is couched in general terms to the effect that anyone who drives an automobile upon the highway shall drive with "due caution and circumspection and at a speed or in a manner so as [not] to endanger or be likely to endanger any person or property." We cannot say that there was necessarily an absence of due caution and circumspection in allowing four persons to ride on the front seat. This was a question of fact under all the circumstances. Besides, it does not appear that the plaintiff knew of any such law or knew that what he did constituted a wilful violation of law. Sloss-Sheffield Steel & Iron Co. v. Nations, 236 Ala. 571, 183 So. 871, 119 A.L.R. 1403. There was evidence to support the finding of the trial court that there was no wilful violation of law.

■ It is argued that there was no evidence in the record to show the time during which the plaintiff suffered temporary total disablement. The accident was on March 26, 1942, and the cause tried on January 18, 1943. There was evidence tending to show that for nine days after the accident, plaintiff received no treatment for his injuries, was then put in a cast and stayed in it for three months and seventeen days, and thereafter had not been able to do any work. There was accordingly evidence tending to show plaintiff's total disability up to the date of the trial. The court has the right and duty to fix the period of temporary total disability according to its best judgment from all the testimony, taking into consideration the nature of the injury. Ford v. Crystal Laundry Co., supra.

■ It is next contended that the court should have awarded compensation as if the plaintiff had only suffered an injury to a leg, which caused partial disability of the leg. Section 279, subdivision (C) of the Workmen's Compensation Act, dealing with compensation for "Permanent Partial Disability," contains a schedule providing the number of weeks for which compensation shall be paid for the loss of a thumb, of specified fingers or phalanges thereof, for loss of toes or phalanges thereof, for loss of a hand, an arm, a foot, a *leg,* an eye, or for loss of one of those members in combination with another such member. There is also a provision in paragraph 3 of subdivision (C) as follows: "In case of permanent disability, *due to injury to a member* resulting in less than total loss of use of such member, not otherwise compensated in this schedule, compensation shall be paid at the prescribed rate during that part of the time specified in the schedule for the total loss or total loss of use of the respective member, which the *extent of the injury to the member* bears to its total loss." (Italics ours)

By paragraph 6 of subdivision (C) it is provided as follows: *"In all other cases* of permanent partial disability not above enumerated, the compensation shall be fifty-five per cent of the difference between the average weekly earnings of the workman at the time of the injury and the average weekly earnings he is able to earn in his partially disabled condition." (Italics ours)

The court was correct in holding that plaintiff did not come within the schedule providing for loss of a leg and did not suffer a permanent disability *due to injury to a member.* Plaintiff's injury was not to his leg, but was an injury to the pelvic bone and back. Plaintiff's leg was not broken, but his pelvic bone was fractured and the whole pelvic bone was pushed upward and backward. The sacroiliac junction was fractured "with an anterior and posterior dislocation." The injury was above the leg. While it is said that the left leg was made permanently shorter, the truth is that the leg was just as long as it had ever been and as a leg was uninjured and unchanged. It was the pelvic bone that was broken and permanently forced upward and out of line  It was this permanent injury to the pelvic bone which caused plaintiff's entire disability.

In the case of Ujevich v. Inspiration Consolidated Copper Co., 42 Ariz. 276, 25 P.2d 273, 275, it appeared that in addition to an injury to plaintiff's leg, he had suffered an injury or fracture of the left hip bone at its junction with the shaft of the femur. The court said: "An injury to the hip is not classified and specifically compensated under subdivision (C) of section 1438. If, as a matter of fact, such injury contributed in any way to the disablement of the petitioner to work, he should be compensated therefor under (w) of said sub-

division (C) such compensation to be calculated according to the formula in (w)." (w) of subdivision (C) of the statute is the provision for "other cases."

In the case of Alabama By-Products Corp. v. Winters, supra [234 Ala. 566, 176 So. 186], the injury consisted in total loss of sight of one eye and partial loss of sight of the other eye. The schedule in the statute then before the Court did not specifically provide for such a situation. The Court said: "It is our opinion and conclusion that compensation in such a case as we have here is not to be made on the basis adopted and applied by the trial court, but rather under that clause of the schedule which governs in all cases of permanent partial disability not specifically enumerated in the schedule."

There is no schedule specifically covering an injury to the pelvic bone and to the back above the uppermost part of the lower limb. The court properly held that the injury fell within the provisions of paragraph 6.

Further the claim that plaintiff's entire disability resulting from the breaking and displacement of his pelvic bone resulted only in a partial disability to his leg is not sound. There was evidence before the court from which it could determine that all the injuries resulted in a permanent partial disability to work and earn a living to the extent of $33\frac{1}{3}$ per cent. Under the decisions of this Court this finding will not be disturbed. Authorities, supra.

Finally, our attention is directed to the ruling of the trial court on the admission in evidence of the deposition of Ashton D. Marsh. However, there was legal evidence of the facts as found by the court independent of the testimony of Marsh. This Court will not in such event on certiorari in a compensation case disturb the findings of the trial court, even if the ruling of the trial court was in error. Majors v. Jackson Lumber Co., Ala.Sup., 13 So.2d 885;[1] Republic Iron & Steel Co. v. Reed, 223 Ala. 617, 137 So. 673; Sloss-Sheffield Steel & Iron Co. v. House, 217 Ala. 422, 116 So. 167.

The judgment of the lower court is affirmed.

Affirmed.

GARDNER, C.J., and BOULDIN and FOSTER, JJ., concur.

---

[1] 244 Ala. 418.