William Arthur Quinn and Monica Elaine Green, the widow of Charles Stanley Green, filed a complaint in the Jefferson County Circuit Court against Process Equipment, Inc. Quinn sought workers' compensation benefits, alleging that he suffered injuries to his head, back, arm, hand, abdomen, and pelvis in a June 16, 1994, automobile accident. Quinn alleged that his injuries arose out of and in the course of his employment. *Page 30 
Monica sought workers' compensation death benefits and burial expenses, alleging that her husband died in the June 16, 1994, automobile accident. The employer answered, denying that Quinn and Green's accident arose out of and in the course of their employment.
Following oral proceedings, the trial court entered a judgment, finding that Quinn and Green's June 16, 1994, accident occurred during their travel from a job site in Virginia to Birmingham and that Quinn and Green's travel arose out of and in the course of their employment. The trial court specifically found that Quinn and Green were returning to Birmingham to "get paid and be ready for a new job assignment." The trial court also found that Quinn had suffered a 20% permanent partial disability. The trial court further found that Monica and her and Green's two minor children were dependent and entitled to death benefits and burial expenses. The trial court awarded benefits accordingly.
The employer appeals, contending that Quinn and Green's automobile accident did not arise out of and in the course of their employment and that the trial court erred in awarding Quinn and Monica workers' compensation benefits.
Quinn's injuries and Green's death occurred on June 16, 1994; therefore, the new Workers' Compensation Act is controlling. The standard of review of a workers' compensation case under the new Act was stated by our supreme court in Ex parte TrinityIndustries, Inc., 680 So.2d 262 (Ala. 1996):
 "[W]e will not reverse the trial court's finding of fact if that finding is supported by substantial evidence — if that finding is supported by 'evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' "
680 So.2d at 268-69 (quoting West v. Founders Life AssuranceCo., 547 So.2d 870, 871 (Ala. 1989)). See also § 25-5-81(e), Ala. Code 1975.
As a general rule, accidents that occur while an employee is driving to or from work are not considered to arise out of and in the course of one's employment. Winn-Dixie Stores, Inc. v.Smallwood, 516 So.2d 716 (Ala.Civ.App. 1987). However, there are several well-established exceptions to the general rule.Id.
In the case where an employee is injured or killed as the result of an accident while traveling to or from work, if the employer furnished the transportation or reimbursed the employee's expenses, or if the employee is engaged in some duty in connection with his or her employment at home or in route, this court has held that such an accident arises out of and in the course of the employee's employment and is compensable.Minor v. Alabama Specialties, Inc., 598 So.2d 938
(Ala.Civ.App. 1992); Worthington v. Moore, 563 So.2d 617
(Ala.Civ.App. 1990); Patterson v. Whitten, 57 Ala. App. 297, 328 So.2d 301
(Ala.Civ.App. 1976).
The record reveals the following facts: The employer is in the business of designing and manufacturing industrial fans for paper mills, utilities, and cement plants. The employer also contracts with various paper mills, utilities, and cement plants to repair or refurbish industrial fans. The employer has "in house" employees, who work in its plants, and "field crew" employees, who travel to various plants to repair or refurbish industrial fans. "In house" employees receive an hourly wage and benefits, such as health insurance and paid vacations. "Field crew" employees are paid a higher hourly wage than "in house" employees; therefore, they do not receive benefits. In 1994 "field crew" employees received travel expenses of $15 per hour one way to a job site, and they received a per diem of $2.36 per hour while at a job site more than three hours away from Birmingham. "Field crew" employees were paid each Friday at one of the employer's plants; they received a paycheck and a check for travel expenses.
During their employment Quinn and Green were welders and "field crew" employees. On June 11, or 12, 1994, Charles Atkinson, a supervisor for the employer, notified Quinn and Green by telephone that the employer had a job at a Union Camp paper mill in Franklin, Virginia; that beginning June 14, 1994, they would be working the 12-hour *Page 31 
night shift at that facility; and that the job would take approximately six days to complete. Quinn testified that Atkinson stated that Green was driving his truck to Virginia and that Quinn should ride with Green if he could.
Quinn testified that he and Green left Birmingham on June 13, 1994, and arrived in Franklin, Virginia, the next morning. Quinn and Green worked the 7 p.m. to 7 a.m. shift on June 14, 15, and 16, 1994. Quinn testified that when he and Green spoke to the foreman, Anthony Jones, on the morning of June 16, they were told that the job was finished and that they were released to return to Birmingham. He testified that he and Green returned to their motel and slept until checkout time, when they left for Birmingham. Quinn testified that approximately one hour after leaving Franklin, Virginia, he and Green were involved in a one-car accident and that Green was killed and he was injured.
Quinn and Monica both testified that after Quinn and Green completed a job, they returned to Birmingham, unless they were sent to another job, and that they would sometimes return to the employer's plant to receive instructions and to collect their paychecks. Quinn also testified that "field crew" employees were asked to place magnetic signs, showing the employer's name and logo, on their private vehicles and that Green had such a magnetic sign on his truck at the time of the accident.
James Woods, chairman and CEO of the employer, testified that Quinn and Green were covered by workers' compensation insurance while they were at the Union Camp facility in Virginia. He testified that Quinn and Green were "field crew" employees, which meant that they traveled to various plants and mills to repair or refurbish industrial fans. Woods also testified that "field crew" employees were paid a higher hourly wage because they did not receive any benefits, e.g., health insurance. He further testified that "field crew" employees received travel expenses of $15 per hour one way; however, he did not know if the travel expenses were for travel to the job site or travel from the job site.
Anthony Jones, the foreman at the Franklin, Virginia, job, determined the number of hours that the "field crew" would be paid for travel expenses, which was 12.5 hours. He testified that if a "field crew" employee quit before the job was finished, the travel expenses were not paid or were deducted from the employee's paycheck. Jones also testified that before 1993, "field crew" employees were paid mileage to and from a job site, but because of problems with that system, the employer began paying $15 per hour one way.
It has often and correctly been stated that whether an accident arose out of and in the course of one's employment must depend upon the facts and circumstances of each case.Young v. Mutual Savings Life Ins. Co., 541 So.2d 24
(Ala.Civ.App. 1989); Union Camp Corp. v. Blackmon, 49 Ala. App. 229,270 So.2d 104 (Ala.Civ.App. 1972). In this case Quinn and Green did not have a regular job site or a regular shift. As "field crew" employees, they worked outside the employer's plants, and they were instructed weekly, and sometimes monthly, where to report for work. "Field crew" employees were paid weekly, and they received their paychecks and travel expense checks on Fridays at one of the employer's plants. The trial court specifically found that Quinn and Green were returning to Birmingham to get paid and to be ready for a new job assignment. This court has held that an accident occurring while an employee is traveling to collect his or her paycheck is in the course of one's employment. Oliver v. Faulkner WoodCo., 531 So.2d 675 (Ala.Civ.App. 1988). See also Moesch v.Baldwin County Electric Membership Corp., 479 So.2d 1271
(Ala.Civ.App. 1985).
After carefully reviewing the record, we conclude that the trial court's finding, that Quinn and Green's accident arose out of and in the course of their employment, is supported by substantial evidence. Therefore, the judgment of the trial court is due to be affirmed.
The foregoing opinion was prepared by Retired Appellate Judge L. CHARLES WRIGHT while serving on active duty status *Page 32 
as a judge of this court under the provisions of § 12-18-10(e), Ala. Code 1975.
AFFIRMED.
All the judges concur.