This is an appeal from a summary judgment entered in a workers' compensation case holding that the plaintiff was not entitled to death benefits in connection with her husband's death. The plaintiff argues that the trial court erred in holding that the employee's death did not occur in the course of his employment. We disagree, and we therefore affirm the summary judgment.
 "We review a summary judgment de novo, applying the same standard as was applied in the trial court. A motion for a summary judgment is to be granted when no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. A party moving for a summary judgment must make a prima facie showing `that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' Rule 56(c)(3), Ala. R. Civ. P. The court must view the evidence in a light most favorable to the nonmoving party and must resolve all reasonable doubts against the movant. Hanners v. Balfour Guthrie, Inc., 564 So.2d 412
(Ala. 1990). If the movant meets this burden, `the burden then shifts to the nonmovant to rebut the movant's prima facie showing by "substantial evidence.'" Lee v. City of Gadsden, 592 So.2d 1036, 1038 (Ala. 1992)."
Bailey v. R.E. Garrison Trucking Co., 834 So.2d 122, 123
(Ala.Civ.App. 2002)
The facts before the trial court, viewed in the light most favorable to the plaintiff, are as follows. Douglas Harold Barrett was killed in an automobile accident on April 14, 2000. Barrett was returning home to Cedartown, Georgia, from Anniston, where he had worked for Lee Brass Company ("LBC") for 11 years. Barrett had traveled to Anniston to pick up his paycheck from LBC.
Barrett's employment with LBC had been terminated effective March 10, 2000. LBC had informed Barrett of the termination in a letter that explained that Barrett's job was being eliminated as part of a force reduction. This letter further explained *Page 229 
that LBC would continue to pay Barrett his usual wages and provide him health insurance and other benefits for several months as part of a severance package. The letter also advised Barrett that the wages paid as part of the severance package "will be paid bi-monthly through the normal payroll process and mailed to you at your most current address of record."
Although Barrett was accustomed to having LBC directly deposit the checks into his Anniston bank account, after March 10 LBC was no longer willing to deposit the paychecks for Barrett. Reiber Heath, LBC's representative in the litigation, stated that it was LBC's practice "to mail the checks in case of severance." Samantha Barrett testified by deposition, however, that after March 10 her husband had traveled to LBC's place of business to pick up each of his paychecks in order to be able to deposit them himself. She also testified by affidavit that, at the time of the accident, her husband had been returning from Anniston along the same route he had customarily followed to and from LBC each workday.
The plaintiff relies heavily upon the decisions of this court in Oliver v. Faulkner Wood Co., 531 So.2d 675 (Ala.Civ.App. 1988), and Process Equipment, Inc. v. Quinn, 701 So.2d 29
(Ala.Civ.App. 1997), in arguing that her husband's death occurred in the course of his employment. For the reasons explained below, we find Oliver and Quinn to be distinguishable from the present case.
To be compensable under our Workers' Compensation Act, § 25-5-1
et seq., Ala. Code 1975, an employee's injury or death must result from an accident "arising out of and in the course of his employment." Ala. Code 1975, § 25-5-31. No all-embracing definition of this standard has yet been found. "Every case involving these words should be decided upon its own particular facts and circumstances, and not by reference to some formula."Moesch v. Baldwin County Elec. Membership Corp.,479 So.2d 1271, 1272 (Ala.Civ.App. 1985).
The phrase "arising out of" employment denotes employment as the source and cause of the accident. In order to satisfy this requirement, "the rational mind must be able to trace the resulting injury to a proximate cause set in motion by the employment and not by some other agency." Id. As was true inOliver, we are not presented in the present case with the question whether the employee's injury was one "arising out of" his employment; the issue presented is whether the employee's injury occurred "in the course of" his employment.
As opposed to the causal element addressed by the "arising out of" requirement, the phrase "in the course of . . . employment" refers to the time, place, and circumstances under which an injury occurs.
 "`An injury to an employee arises in the course of his employment when it occurs within the period of his employment, at a place where he may reasonably be and while he is reasonably fulfilling the duties of his employment or engaged in doing something incident to it.'"
Moesch v. Baldwin County Elec. Membership Corp., 479 So.2d at 1272 (quoting Massey v. United States Steel Corp.,264 Ala. 227, 230, 86 So.2d 375, 378 (1956)) (emphasis added).
The present case does not involve an accident that occurred within the period of Barrett's employment. Nor did the injury occur at or near Barrett's place of employment or while he was fulfilling duties associated with his employment. Instead, Barrett's accident occurred on a public *Page 230 
highway while he was coming home from picking up his paycheck.
What is often referred to as the "going and coming rule" has long been recognized in our caselaw. In the early case ofBarnett v. Britling Cafeteria Co., 225 Ala. 462, 143 So. 813
(1932), the Alabama Supreme Court explained:
 "It is, of course, the general rule that, if an employee is injured while going to or from his work to his home, or to or from some point not visited for the discharge of a duty arising out of the employment, or while in the use of a public highway used by the public generally, he does not come within the protection of the Workmen's Compensation Act."
Barnett, 225 Ala. at 463, 143 So. at 813.
The Supreme Court also recognized an exception to the general rule, however, explaining that "the employment is not limited by the actual time when the workman reaches the scene of his labor and begins it nor when he ceases, but includes a reasonable time, space, and opportunity before and after while he is at or near his place of employment." 225 Ala. at 463, 143 So. at 813. The Supreme Court further explained:
 "One of the tests is whether the workman is still on the premises of his employer. This, while often a helpful consideration, is by no means conclusive. A workman might be on the premises of another than his employer, or in a public place, and yet be so close to the scene of his labor, within its zone, environments, and hazard as to be, in effect, at the place and under the protection of the act. Honnold on Workmen's Compensation, §§ 107 and 109. Indeed, our own court is in line with the foregoing, and, after stating that the employee need not necessarily be in the actual discharge of a duty connected with the employment, says: `Within the purview of such naturally related and incidental acts in the course of the employment is the movement of the employee in entering, at the appropriate time, the employer's premises to discharge his function; his preparation to begin and to terminate his actual service; and to leave the premises at an appropriate time after the completion of his actual service.' Jett v. Turner, 215 Ala. 352, 110 So. 702, 704 [(1926)]; Benoit Coal Mining Co. v. Moore, 215 Ala. 220, 109 So. 878
[(1926)], and cases cited."
Barnett, 225 Ala. at 463, 143 So. at 813.
In Barnett, the employee slipped on a sidewalk immediately in front of her employer's place of business while on her way to report for duty and just before entering the entrance used by all employees for the purposes of discharging their employment duties. The sidewalk in front of the defendant's place of business, while a public one, was also used by the defendant as a necessary entrance to the defendant's place of business by its customers and its employees. Applying the above-stated principles to these facts, our Supreme Court concluded in Barnett that "the sidewalk was, to a limited degree, and purpose, a part of the defendant's premises," and the employee's injury thereon occurred in the course of her employment. Barnett,225 Ala. at 464, 143 So. at 813-14.
More recently, in Ex parte Shelby County Health CareAuthority, 850 So.2d 332 (Ala. 2002), our Supreme Court again recognized the "going and coming rule":
 "Generally, Alabama law has held that injuries sustained in accidents that occur while an employee is traveling to and from work are not covered under the [Workers' Compensation] Act because those injuries do not meet the `arising out of and in the course of employment' requirement."
850 So.2d at 336. The Court also recognized several exceptions to this general *Page 231 
rule, including an exception "when an employee, during his travel to and from work, is engaged in some duty for his employer that is in furtherance of the employer's business." Id. The employee in Ex parte Shelby County Health Care Authority, however, did not fall within this or any other exception to the "going and coming rule." Her accident occurred while she was traveling home after finishing her second 16-hour work shift in two days. As the Supreme Court explained, "[the employee's] injuries that resulted from her car accident did not occur at her place of employment, nor was she engaged in any duties of her employment when the accident occurred. Therefore, [the employee's] injuries did not meet the `in the course of [her] employment' requirement of the [Workers' Compensation] Act." 850 So.2d at 336.
Despite the apparent applicability of the "going and coming rule," Barrett argues that this court held in Oliver andQuinn that, as a matter of law, a trip to pick up one's paycheck is "in the course of employment." We do not agree with this interpretation of those cases.
In Oliver, the employee had been assigned by his employer to work, and had worked, during the course of his normal workday at a worksite located some distance from his employer's primary place of business. The employee had been instructed by the employer to travel, after completing his work for the day at that remote location, to another location at which the employee would be paid by the employer. While in route to the second location, the employee was injured. The Court of Civil Appeals reasoned that these facts did not fall within the general "going and coming rule," noting, among other things, that "when the accident occurred, [the employee] was not returning directly home." 531 So.2d at 678. Instead, the employee in Oliver was traveling from one location at which he had been instructed to work to another location to which his employer had instructed him to travel in order to receive his paycheck. Further, the employee's travel occurred at the conclusion of his workday.
In Quinn, the employee was a member of a "field crew" that was routinely assigned to travel to perform work at remote jobsites. The employee was injured while returning to Alabama after traveling to Virginia to work at a remote jobsite. He received travel expenses of $15.00 per hour one way to the jobsite in Virginia, as well as a per diem of $2.36 per hour because the jobsite was more than three hours from the employer's primary place of business. The Supreme Court concluded that the employee was covered by the Workmen's Compensation Act, noting, among other things, that
 "after [field-crew employees] completed a job, they returned to Birmingham, unless they were sent to another job, and that they would sometimes return to the employer's plant to receive instructions and to collect their paychecks. [One employee] also testified that `field crew' employees were asked to place magnetic signs, showing the employer's name and logo, on their private vehicles and that [another field-crew employee] had such a magnetic sign on his truck at the time of the accident."
Quinn, 701 So.2d at 31.
Relying upon Oliver and Quinn, and quoting the following passage from a treatise on workers' compensation law that, in turn, cites Oliver as authority, the plaintiff argues that "[t]he contract of employment is not fully terminated until the employee is paid, and accordingly an employee is in the course of employment while collecting her or his pay." 2 Arthur Larson 
Lex K. Larson, Larson's Workers' Compensation Law § 26.03[1] (footnote omitted), citing Oliver, 531 So.2d 675. *Page 232 
The facts of the present case, however, are distinguishable from those in Oliver and Quinn. Barrett was not traveling from one worksite to another at his employer's direction. Nor was Barrett's travel part of Barrett's workday or period of employment, as was the employee's travel in Oliver and Quinn.
Nor can it be argued that Barrett was performing any duties of his employment while traveling. Barrett, in fact, was no longer employed by LBC; he was merely returning home after traveling to LBC to pick up his paycheck.
We do not read Larson's treatise on workers' compensation law as asserting anything other than that an employee may, while collecting his paycheck from his employer, fall within the exception to the general "going and coming rule" that has been recognized by our courts as applicable to a "reasonable time, space, and opportunity before and after while [the employee] is at or near his place of employment." Barnett, 225 Ala. at 463,143 So. at 813. In other words, it is possible for an employee to be within his employment's "zone, environments, and hazard" in connection with collecting a paycheck just as it is possible for the employee to be so while actually doing work for the employer.Id. Logically, however, there is no reason to afford an employee greater protection while collecting his pay than while he is actually performing the services for which he has been hired. In fact, Larson recognizes that an employee's travel to and from his home and his place of employment in order to collect a paycheck no more places an employee "in the course of employment" than does the employee's traveling to and from home to do actual work for the employer:
 "Once the collection of pay has been identified as a work-connected activity, it follows that the normal course of employment limitations applicable to any work activity should apply. Thus, an injury occurring off the premises while the claimant is on the way to the plant to collect a paycheck, or is on the way home, is outside the course of employment; for there is no reason to place the discharged worker about to collect pay in a stronger position than that afforded to the worker on the way to the actual performance of his or her employment duties."
Larson's Workers' Compensation Law, § 26.03[3] (footnote omitted).
The accident that resulted in Barrett's death was no more "in the course of" his employment than it would have been if it had occurred while he was still employed by LBC and had simply been traveling home from a normal workday. It would be ironic indeed if this court were to hold that this accident, which occurred when Barrett was returning home after merely picking up his paycheck, and after his position at the company had been eliminated, was compensable under the Workers' Compensation Act, when an accident that occurs while an employee is returning home after actually performing his or her job duties is not.
Accordingly, this case falls within the general rule "that accidents which occur while the employee is traveling to and from work are not considered `arising out of and in the course of' his employment." Winn-Dixie Stores, Inc. v. Smallwood,516 So.2d 716, 717 (Ala.Civ.App. 1987).
The judgment of the trial court is affirmed.
AFFIRMED.
YATES, P.J., and CRAWLEY, THOMPSON, and PITTMAN, JJ., concur. *Page 233